146   485
178   506
146     485
21 SC  2650
146     485
25 SC  2472
146     485
30 SC  1643
146   485
41SC2223

## EDWARD KELBER v. PITTSB. N. PLOW CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 30, 1891—Decided January 4, 1892.
[To be reported.]

1. Under the act of May 20, 1891, P. L. 101, giving a right of appeal from orders opening, vacating, or striking off, etc., "judgments of any kind, whether entered by amicable confession, upon warrant of attorney or otherwise," an appeal will lie from an order, made prior to the passage of the act, opening a judgment taken for want of an appearance.

2. An application to open a judgment is an equitable proceeding, addressed to the discretion of the court. The act of May 20, 1891, like the prior act of April 4, 1877, P. L. 53, allowing an appeal from the refusal to open a judgment, has not taken away such discretion; and on appeal, the Supreme Court will only determine whether the discretion has been properly exercised.

3. The question whether terms shall be imposed in the opening of a judgment, under either of the acts referred to, is a matter peculiarly within the discretion of the court to which the application is made, and it would require a very strong case to move the Supreme Court to interfere on that point. In the present case, the discretion was properly exercised.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 202 October Term 1891, Sup. Ct.; court below, No. 373 September Term 1888, C. P. No. 1.

On July 20, 1888, Edward Kelber brought assumpsit against The Pittsburgh National Plow Company, to recover compensation for ten years' service as an employee of the defendant company, from 1878 to 1888, at the rate of fifty dollars per month. The plaintiff's statement of claim, filed with the præcipe for summons, set out that the plaintiff was employed by the defendant through L. Matthews, its attorney in fact, to take charge of the defendant's property at Rochester, Beaver county, Pennsylvania, for the compensation of $50 per month, and that he faithfully discharged the duties of such employment, etc.

A summons was issued returnable on the first Monday of August, 1888, to which the sheriff made return that he served

the same on August 6, 1888, by leaving a true and attested copy at the residence of James I. Bennett, president of the defendant company, with an adult member of his family. The record did not show service of a copy of the plaintiff's statement of claim. On September 5, 1888, judgment was entered against the defendant, in default of an appearance and affidavit of defence, for $6,000.

On May 12, 1890, on petition of the defendant, the court granted a rule to show cause why the judgment should not be opened, and the defendant let in to a defence. The petition, verified by the affidavit of James I. Bennett, averred in substance that the defendant was a corporation organized under the act of April 7, 1849, P. L. 563, on October 2, 1865; that, under the limitation contained in said act, it ceased to be a corporation on October 2, 1885, and it ceased to do business long prior to the year 1878; that the affiant had no recollection of having been elected as its president, and did not believe that he ever was so elected; that, at the time of the alleged service of the summons, on August 6, 1888, the affiant was, as he believed, absent from home; that neither he nor any officer or stockholder of the company had knowledge of such service, and the first knowledge of the judgment that came to any one connected with the company, was received on March 8, 1890, through a letter from one N. F. Hurst, an agent of the company having charge of its real estate at Rochester, Pennsylvania, stating that a notice of a sheriff's sale was posted on said premises; and that the defendant had a full legal defence to the whole of the plaintiff's claim, to wit: That L. Matthews who, as was alleged, employed the plaintiff, was not an officer, attorney in fact, or employee of the defendant company; that on the plaintiff's own statement, his claim for salary for four years of the time covered by his suit, was barred by the statute of limitations; and that, during the period for which the suit was brought, the buildings of the defendant were pulled down and dismantled, and the materials thereof sold by the plaintiff and the proceeds thereof taken by him, without the defendant's knowledge or consent.

The plaintiff, in response to the rule, filed an answer, denying that the defendant company was incorporated under the act of April 7, 1849, and averring that it was incorporated un-

der the act of July 18, 1863, P. L. (1864) 1102; denying that it ceased to do business prior to 1878, and averring that it continued to do business "until but recently;" averring that James I. Bennett was its president, acted as such, and as such dealt with the plaintiff; averring that the allegations of the petition respecting Mr. Bennett's absence from home, in August, 1888, were too vague and indefinite to contradict the sheriff's return of service; that the employment of the plaintiff by L. Matthews was by defendant's direction and was ratified by the defendant, which accepted plaintiff's services under such employment, and paid for part of them; that the plea of the statute of limitations came too late; and that the allegations of the petition respecting the dismantling of defendant's buildings and the sale of the materials thereof by the plaintiff, etc., were untrue.

Testimony was taken for the defendant in support of the petition, tending to show that the defendant's officers and stockholders had no knowledge of the suit brought by the plaintiff until March, 1890, and that the defendant ceased to do business at Rochester in 1874, and the last of its manufactured goods were sold in 1878 or 1879. James I. Bennett testified that in August, 1888, he resided in Allegheny City, but was away from home during the greater part of that month, though he could not say on what days he was at home. N. F. Hurst testified for the defendant that the witness had had charge of the property at Rochester from and after about February 1, 1885.

Testimony for the plaintiff tended to show that he was employed as averred in the statement of claim; that he had charge of the buildings and real estate of the company, and also of the sales of manufactured goods it had on hand, the last of which were sold in 1884; that after 1884, he continued to look after the real estate; that the defendant accepted his services, he was never discharged, and that he rendered accounts to Mr. Bennett as president of the defendant company. The plaintiff testified that, in 1889, he informed John G. Holmes, the acting treasurer of the company, of the fact that he had recovered a judgment against the company, and offered to throw off one thousand dollars if the company would pay the judgment. This was contradicted by Mr. Holmes. Plaintiff testified,

Arguments.

further, that he had spoken to Mr. Bennett several times about his pay, and that the latter put him off on the plea that he had not time to attend to it, saying that he would do so afterwards.

The following letter was put in evidence:

"ROCHESTER, Pa., July 15, 1886.
"JAS. I. BENNETT, ESQ.:

"Dear sir: The last time I called on you it appeared that you refused to pay my claim for six years' wages, for the years 1878 to 1884, at $600 a year, amounting to $3,600. It seems to be the old story, " the Moor has done his duty, the Moor can go." Only, the merchants and manufacturers of Venice were gentlemen, and of course paid the Moor before they dismissed him.

"I cannot afford to lose this money, because I am very poor, near sixty years old, with a wife and five children, and I know a lawsuit against a rich man is an up-hill business for a poor man. Therefore, I am open to any reasonable proposition before engaging a lawyer. Please give this your immediate attention and answer as soon as possible.

"N. B.: The last plows and the last machinery have only lately been removed from Pittsburgh National Plow Works.

"Yours respectfully,        E. KELBER."

After hearing, the court, SLAGLE, J., on November 19, 1890, without opinion filed, entered an order making the rule to open the judgment absolute; exception.[1] On June 4, 1891, the plaintiff took this appeal, specifying that the court erred:

1. In making the rule to open absolute.

2. In not imposing terms upon the defendant when the judgment was opened.


*Mr. J. M. Swearingen*, for the appellant:

1. The evil, to remedy which the act of May 20, 1891, P. L. 101, allowing appeals from the opening of judgments, was passed, is exhibited in Knarr's App., 19 W. N. 531; English's App., 119 Pa. 533; Scott's App., 123 Pa. 155. Though the decision in this case was made prior to the passage of that act, this appeal was properly taken after the act became a law: Long's App., 87 Pa. 114; Kille v. Iron Works, 134 Pa. 225; Lane v. White, 140 Pa. 99.

2. The judgment ought not to have been opened. No material allegation of the defendant was proved. This court can judge the case just as well as the court below, which had nothing but the written pleadings and written testimony before it. Again, the defendant had its day in court, and refused to defend. The return of the sheriff that the writ was served is conclusive between the parties; if it was wrong, the remedy is to sue the sheriff: Bennethum v. Bowers, 133 Pa. 332; Benwood I. Works v. Hutchinson, 101 Pa. 359.

3. The defendant has been guilty of gross laches in moving to open the judgment. Seven terms had passed, and more than two months had elapsed after the defendant admittedly knew the judgment had been recovered. No defence was shown. While a judgment might be opened to let in the plea of the statute of limitations, in order to prevent manifest injustice, there is no case on record where a lawful judgment was opened to allow a defendant to plead the statute in bar of an honest claim.

*Mr. George P. Hamilton*, for the appellee:

1. Prior to the act of May 20, 1891, P. L. 101, the opening of a judgment in default of an appearance was within the sound discretion of the court below, and was not reviewable : Gibson v. Simmons, 134 Pa. 189; Lyon v. Phillips, 106 Pa. 57. This case must be decided on the state of the law prior to that act, which is not made retroactive on its face, and therefore will not be construed to take away from the defendant its vested right to have its defence heard by a jury : Kille v. Iron Works, 134 Pa. 227 ; Lane v. White, 140 Pa. 99.

2. The Supreme Court will not reverse where a sound discretion has been exercised on an application to open a judgment : Wernet's App., 91 Pa. 319 ; nor, except for plain error : Babcock v. Day, 104 Pa. 4; Bedell's App., 87 Pa. 510; and this rule of law has not been changed by the act of May 20, 1891 : Earley's App., 90 Pa. 321 ; Babcock v. Day, 104 Pa. 4. Not having complied with the procedure act of May 25, 1887, P. L. 271, in the matter of serving a copy of the statement of claim, or giving notice that it was filed, the plaintiff was not entitled to judgment for want of an affidavit of defence : Marlin v. Waters, 127 Pa. 177 ; and his judgment is to be considered as

in default of appearance only. Such judgments the court is always liberal in opening.

3. The fact that a part of the plaintiff's claim was barred by the statute of limitations, was a good cause for opening the judgment: Ellinger's App., 114 Pa. 505; Herman v. Rinker, 106 Pa. 121; Sossong v. Rosar, 112 Pa. 197. Again, by his letter of July 15, 1886, the plaintiff claimed wages down to 1884, only, and it is shown that N. F. Hurst had charge of the property after that. Plaintiff's conduct and all the evidence shows that his employment was but temporary; and his delay in moving to have the judgment opened was not unreasonable, in all the circumstances of the case, and in any event the court below took it into consideration. And the defendant made no attempt to contradict the sheriff's return. It simply showed that the service was not a personal one.

PER CURIAM:

It is assigned for error that the court below erred in opening the judgment, and also that " it should at least have imposed terms upon defendant when the judgment was ordered to be opened."

It is very clear that prior to the passage of the act of May 20, 1891, P. L. 101, no appeal would lie to the order of the court opening this judgment: Lyon v. Phillips, 106 Pa. 57 ; Gibson v. Simmons, 134 Pa. 189. The first section of that act provides :

" That in all cases of application for the opening, vacating and striking off judgments of any kind, whether entered by amicable confession, upon warrant of attorney or otherwise, any party aggrieved by the decision of the court opening, vacating or striking off, or the refusal to open, vacate or strike off such judgment, may appeal therefrom to the Supreme Court of this commonwealth, and such cause shall thereupon be heard, reviewed and decided upon such appeal by the Supreme Court, in like manner as appeals from final decrees to the said Supreme Court."

The judgment below was entered by default for want of an appearance. We think it comes within the act of 1891, and that the appeal was lawfully taken. The act in question, with the prior act of April 4, 1877, P. L. 53, have made a radical change, so far as the right of appeal is concerned. What was

formerly an absolute discretion in the court below is now reviewable here.    To what extent is it reviewable?    The answer to this question will be found in Jenkintown N. Bank's App., 124 Pa. 337, where it was said, in speaking of the act of 1877: " Prior to the act of 1877, as before observed, the opening of a judgment rested in the discretion of the court below, and no appeal was allowed to this court.    It by no means follows, however, that the discretion formerly vested in the Common Pleas in regard to opening judgments, has been taken away by the act of 1877. Upon appeal to this court we only decide whether the discretion has been properly exercised."    To the same point are Earley's App., 90 Pa. 321; Wernet's App., 91 Pa. 319; Kneedler's App., 92 Pa. 428; Wise's App., 99 Pa. 193.    It is true, these cases refer to the act of 1877, but they are equally applicable to the act of 1891.    All of them conclusively show that an application to open a judgment, under either of the acts aforesaid, is an equitable proceeding addressed to the discretion of the court, and is to be disposed of in accordance with the principles of equity.    " The judge to whom the application is made acts as a chancellor, and upon appeal, this court will only see that his discretion has been properly exercised: " Jenkintown N. Bank's Appeal, supra.

An examination of this case fails to show that the discretion of the court below was improperly exercised.    The judgment was taken by default against a defunct corporation, whose business was practically wound up and most of the incorporators dead.    It is true, the sheriff returned a service upon " James I. Bennett, president; " but Mr. Bennett swears he was not the president, and that he had no knowledge of the suit or the service.    The judgment was entered for ten years' services of the plaintiff, a considerable portion of which was barred by the statute of limitations.    It is true, there was considerable delay in making the application to open the judgment, but this is fairly accounted for.    No terms were imposed by the court below, but that was a matter peculiarly in the discretion of the court, and it would require a very strong case, much stronger than this, to move us to interfere.    We think the order made by the learned judge was fully justified by the facts, and it is accordingly

                                                        Affirmed.