380 A.2d 404

**Julius QUATROCHI, Appellant,**

v.

**Henry GAITERS, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1977.

Decided Dec. 2, 1977.

116

Peter S. Kretzu, Philadelphia, for appellant.

Joel Feldscher, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in granting appellee's petition to open a default judgment. We agree, and, therefore, reverse the order of the lower court.

On March 29, 1976, appellant filed a complaint in trespass against appellee in the Court of Common Pleas of Philadelphia County. The complaint alleged that on November 29, 1975, appellee operated a car in a negligent manner and consequently struck appellant, a pedestrian, as he crossed Girard Avenue in Philadelphia. On March 30, 1976, a sheriff made service of process upon one Mrs. Parill at 1500 Locust Street in Philadelphia. The return of service indicated that Mrs.. Parill was an "agent or person for the time being in charge of defendant's office or usual place of business." Pa.R.Civ.P. 1009(b)(2)(iii); 42 Pa.C.S. 1009(b)(2)(iii). Appellee did not file an answer to this complaint. On April 23, 1976, appellant filed a praecipe for entry of a default judgment, and the prothonotary entered judgment. Pa.R.Civ.P. 1037. On the same day, the prothonotary mailed notice of the entry of the default judgment to appellee at 1500 Locust Street. Pa.R.Civ.P. 236.

On August 24, 1976, appellee's attorney entered an appearance. On September 16, 1976,[1] appellee filed a petition to open the default judgment in the Philadelphia Court of Common Pleas. Therein, appellee made the following alle-

1. The record does not clearly establish the date that appellee filed his petition to open the default judgment. For example, the docket entries provide the following contradictory information: On September 28, 1976, a petition of unspecified nature was filed and the lower court issued a rule to show cause why the default judgment should not be opened. On October 5, 1976, appellee's counsel filed an affidavit which stated that he had sent a copy of a petition to open judgment to appellant's counsel on September 16, 1976. Finally, the docket entries reflect that sometime in November, 1976, appellee filed a petition to open the default judgment, and appellant filed an answer.

Other items in the record demonstrate equal confusion. The record contains a copy of a rule to show cause why the default judgment should not be opened. This order was signed on September 23, 1976. Appellant's attorney filed an affidavit which stated that appellee filed a petition to open default judgment on September 16, 1976, and that the attorney received notice of this action on September 17, 1976. In its memorandum opinion, the lower court stated that appellee filed a petition to open the default judgment on September 16, 1976.

Because the parties and the court below accepted September 16, 1976, as the date that appellee filed his petition, we will assume for purposes of this opinion that September 16, 1976, is the correct filing date.

gations. While he had once resided in an apartment at 1500 Locust Street, shortly before the accident he moved to 4563 N. 17th Street in Philadelphia. When the accident happened, appellee showed appellant a copy of his driver's license which listed his address as 1500 Locust Street. However, appellee told appellant that he had moved and gave appellant his new address. Because he moved from his Locust Street apartment before the accident and lawsuit, appellee never received notice of the complaint. When he received notice of the default judgment, appellee immediately informed his insurance company which commenced an investigation and hired an attorney to petition to open the default judgment.

Appellant filed an answer to the petition which made the following assertions. After the November 29, 1975 accident, appellee told appellant that his address was 1500 Locust Street. Appellee did not mention that he had moved. On February 2, 1976, appellant's attorney sent a letter by certified mail to appellee at 1500 Locust Street, notifying appellee that the attorney represented appellant. On February 24, 1976, appellee signed for this letter and a receipt was returned to appellant's attorney. In May or June of 1976, appellee's insurance representative notified appellant's attorney that he knew of the default judgment. Appellant's answer also maintained that the deliberate failure of appellee's petition to specify a date when appellee first learned of the default judgment rendered the petition fatally defective.

On October 12, 1976, counsel for both parties deposed appellee. Appellee's deposition supported the factual allegations of his petition to open the default judgment. Appellee testified that he moved out of his Locust Street apartment shortly before the accident. When he did so, he notified the post office of his change in address. Nevertheless, he experienced delays and difficulties in receiving mail forwarded to his new address. Thus, he did not receive the February 2, 1976 letter of appellant's attorney until February 24, 1976. Moreover, he never received a copy of the complaint, even though he had notified appellant of his change of address.

Appellee testified that he received notice of the default judgment on July 5, 1976; he immediately notified his insurance company.

On November 17, 1976, the lower court entered an order opening the default judgment. This appeal followed.

Appellant contends that the lower court abused its discretion in granting the petition to open the default judgment. In *James v. Reese*, 250 Pa.Super. 1, at 5, 378 A.2d 422, at 424 (1977), our Court recently reiterated the well-settled tests for determining if a lower court properly opened a default judgment:

█ "A lower court's disposition of a petition to open a default judgment will not be disturbed in the absence of a clear, manifest abuse of discretion. *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973); *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Barron v. William PennRealty Co.*, 239 Pa.Super. 215, 361 A.2d 805 (1976). In determining whether the lower court abused its discretion, we must consider three factors: (1) the promptness with which the petition was filed, (2) whether the default was reasonably explained, and (3) whether a defense on the merits has been shown. *Barron v. William PennRealty Co.*, supra. We have held that a petitioner need not show a defense on the merits to a complaint in trespass in order to open a default judgment, if the equities are otherwise clear. See *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971); *Beam v. Carletti*, 229 Pa.Super. 168, 323 A.2d 180 (1974)."

Appellant first contends that appellee failed to explain reasonably the default judgment. In particular, appellant contends that because the sheriff's return indicated proper service of process, appellee could not, absent a showing of fraud, claim that he did not receive service of process.

In *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965), the sheriff's return indicated that the sheriff had effected service of process by going to defendant's dwelling house at 5537 Palethorpe Street in Philadelphia and handing a copy of the complaint to an adult member of defendant's family

who also resided there. In a preliminary objection, the defendant challenged the validity of the service of process. Defendant maintained that she had never lived at 5537 N. Palethorpe Street in Philadelphia, and that when the sheriff made service of process, she resided in a convent in Merion, Montgomery County. The lower court dismissed the preliminary objection because it believed that a sheriff's return could not be attacked by means of extrinsic evidence showing a different address. On appeal, the Pennsylvania Supreme Court reiterated the traditional rule that ". . . in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence." supra 416 Pa. at 475, 206 A.2d at 3. However, the Court held that this rule does not apply when a defendant seeks to challenge the validity of the sheriff's return based on facts outside the sheriff's personal knowledge. The Court stated:

"When a sheriff's return states that a certain place is the *residence* or *dwelling house* of the defendant, such statement is not of a matter ordinarily within the personal knowledge of the sheriff but only a statement based upon that which he has been *told* by other persons, i. e., he had been instructed by a third person to make service at a certain place which he is *told* is the residence or dwelling house of the defendant. No sound reason exists for giving a conclusive effect to a statement in the sheriff's return as to a fact or conclusion which arises not from the sheriff's own personal knowledge or observation but from information given him by other persons. In the case at bar, no attack is permissible upon the statements in the sheriff's return that he served this writ at a certain specified time at 5537 North Palethorpe Street, Philadelphia, but the rule does not preclude an attack upon the statement in the return that 5537 North Palethorpe Street, Philadelphia, was the *dwelling house* or *residence* of Rita Hollinger." (Emphasis in the original). Supra 416 Pa. at 477–78, 206 A.2d at 3.

In *Minetola v. Samacicio*, 399 Pa. 351, 160 A.2d 546 (1960), a petitioner seeking to open a default judgment maintained

in his petition and deposition that he had never received service of process because he had changed residences four months before the date of service. Our Supreme Court held that petitioner could attack the sheriff's return by introducing evidence that he had not resided at the address where the sheriff served process. However, the Court affirmed the lower court's refusal to open a default judgment because petitioner had not alleged a valid defense on the merits in an equity case.

■ *Hollinger* and *Minetola* stand for the proposition that a defendant may attack the validity of a sheriff's return when he alleges that he did not reside at the place where the sheriff effected service. *See also* Goodrich-Amram, *Standard Pennsylvania Practice*, § 1013(b): 2. The residence of a defendant is not a fact of which a sheriff presumptively has personal knowledge; a sheriff must ordinarily rely upon hearsay information supplied by third parties in determining the residence of a defendant.

■ *Hollinger* and *Minetola* control the instant case. Appellee contends that he changed residences before the accident and thus no longer resided at 1500 Locust Street when the sheriff left a copy of the complaint with the assistant manager of the apartment building at that location.[2] Thus, appellee never received service of process and did not know that a lawsuit had commenced. The lower court accepted

2. We note that the sheriff' return indicates that service was made on an "agent or person for the time being in charge of defendant's office or usual place of business." *Hollinger* and *Minetola* permit appellee to attack the statement of the sheriff's return that appellee had a business office at 1500 Locust Street. In fact, the parties agree that appellee never conducted a business or had an office at 1500 Locust Street.

We also note that Pa.R.Civ.P. 1009(b)(2)(ii) allows service of process by handing a copy of the complaint "at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides . . ." In the instant case, the sheriff served a copy of the complaint on Mrs. Parill, an assistant manager temporarily in charge of the apartment facilities at 1500 Locust Street. We need not decide whether Rule 1009(b)(2)(ii) contemplates service of process upon an assistant manager temporarily in charge of an apartment complex.

appellee's account and, therefore, concluded that appellee had advanced a reasonable explanation for his failure to respond to the complaint. Based on the lower court's factual findings, we agree.

■ Appellant next contends that the appellee failed to file promptly his petition to open judgment. More specifically, appellant contends that appellee failed to proffer a reasonable justification for the eight week hiatus between the date, July 15, 1976, that appellee received notice of the default judgment and the date, September 16, 1976, that appellee filed his petition to open the default judgment. While our Court does not employ a bright line test for determining whether a petition to open judgment has been promptly filed, we will focus on two factors: (1) the length of the delay between discovery of the entry of a default judgment and filing the petition to open judgment, and (2) the reason for the delay. *Ruczynski v. Jesray Construction Co.*, 457 Pa. 510, 326 A.2d 326 (1974); *Hofer v. Loyal Order of Moose of World, Mount Pleasant Lodge No. 27*, 243 Pa.Super. 342, 365 A.2d 1254 (1976).

In *Pappas v. Stefan*, supra, our Supreme Court reversed a lower court's order opening a default judgment because, in part, petitioner did not promptly seek to overturn the default judgment. The Court summarized the pertinent law and facts as follows:

"Nor can we construe these facts as corroborative of the court's conclusion that the appellee 'acted promptly' in filing his petition to open. Default judgment was taken November 9, 1971. By appellee's own admission, notice of the default judgment was brought home to appellee about one week later. The petition to open was not filed until January 13, 1972. In *Texas & B. H. Fish Club v. Bonnell Corp.*, 388 Pa. 198, 203–4, 130 A.2d 508, 510 (1957), this Court held that, where a petition to open was filed twenty-seven days after notice of the default judgment was communicated to petitioner, the petition was properly denied. Here counsel for the appellee waited approximately fifty-five days from the date of notice to file his petition to open. No satisfactory

explanation is offered for this eight-week delay.[3] The finding of the court below that counsel acted promptly in filing his petition to open is unsupported by the evidence." *Pappas*, supra 451 Pa. at 358, 304 A.2d at 146.

In *Schutte v. Valley Bargain Center*, 248 Pa.Super. 532, 375 A.2d 368 (1977), our Court confronted a factual situation almost indistinguishable from that in the case at bar. In *Schutte*, the lower court granted an order opening a default judgment, despite a 47 day delay between petitioner's discovery that a default judgment had been entered and the initiation of legal action. Petitioner knew on July 17, 1974, that a default judgment had been entered; he informed his insurance company immediately. Nevertheless, petitioner and his insurance company did not retain counsel until August 14, 1974, and counsel did not file a petition to open the judgment until September 11, 1974. On appeal, we found no reasonable explanation for the delay in hiring counsel and counsel's delay in filing the petition. Accordingly, we held that the lower court abused its discretion in opening the default judgment.

In *Telles v. Rose-Tex, Inc.*, 233 Pa.Super. 181, 335 A.2d 440 (1975), we reversed a lower court's order opening a default judgment. After receiving notice of the default judgment, petitioner delayed more than eight weeks before filing his petition to open judgment. We found this delay to be excessive, particularly in light of petitioner's tenuous explanations.[4] Our Court has also found unexplained delays of 22 days, 47 days, 54 days, and 71 days before filing a petition to require reversal of an order opening a default judgment.[5]

**3.** "Appellee attributes the delay to his informal attempts to have appellant's attorney open the judgment." (Footnote in original).

**4.** Petitioner asserted that (1) respondent's counsel had assured him that there would be no immediate execution on the judgment, and (2) the suit had been brought in a different county than the location of petitioner's principal office.

**5.** *See*, respectively, *Smith v. Tonon*, 231 Pa.Super. 539, 331 A.2d 662 (1974); *Hofer v. Loyal Order of Moose of World, Mount Pleasant Lodge No. 27*, supra; *Carducci v. Albright Galleries, Inc.*, 244 Pa.Su-

■ In the instant case, appellee admittedly learned of the default judgment on July 15, 1976, and immediately notified his insurance company. Appellee's attorney entered an appearance on August 24, 1976, and filed a petition to open judgment on September 16, 1976. Appellee's petition and deposition offer no explanation whatsoever for this prolonged delay; all we can determine is that the insurance company, after receiving notice of the default judgment, commenced an investigation and eventually retained appellee's attorney.[6] Appellee has not even alleged negligence by his insurance company, much less advanced a factual basis for such an assertion. *Cf. Balk v. Ford Motor Co.*, supra; *MacClain v. Penn Fruit, Inc.*, 241 Pa.Super. 303, 361 A.2d 403 (1976). In sum, the record provides no explanation for the 63 day delay before the September 16, 1976 petition to open judgment. In light of *Pappas, Schutte, Telles*, and myriad other Pennsylvania cases, we must hold that the lower court abused its discretion in opening the default judgment.

Order reversed.

VAN der VOORT, J., notes dissent.

per. 48, 366 A.2d 577 (1976); *Reliance Insurance Co. v. Festa*, 233 Pa.Super. 61, 335 A.2d 400 (1975).

**6.** In his brief before our Court, appellee attempts to explain his delay in filing the petition to open judgment. In particular, appellee maintains that his insurance company and counsel had to spend an inordinate amount of time investigating his case because they did not have a copy of the complaint. Appellee also asserts that counsel did not know that appellee had changed addresses. Consequently, communication problems impeded prompt consultation and action. However, appellee did not present these arguments in any brief or pleading before the lower court. Appellee is now precluded from offering these excuses for the first time before our Court. *See Smith v. Tonon*, supra 231 Pa.Super. at 544, ftn. 5, 331 A.2d at 665.