Bertha STABLEY, Appellee

v.

The GREAT ATLANTIC & PACIFIC TEA CO. and Pathmark Stores, Inc., Appellants.

Superior Court of Pennsylvania.

Submitted Nov. 12, 2013.

Filed April 10, 2014.

Audrey J. Copeland, King of Prussia and Andrew S. Rosembloom, Cherry Hill, N.J., for appellants.

Ronald E. Freemas, Media, for appellee.

BEFORE: GANTMAN, J., OLSON, J., and WECHT, J.

OPINION BY WECHT, J.:

The Great Atlantic & Pacific Tea Company ("A & P") and Pathmark Stores, Inc. ("Pathmark") (collectively, "Appellants"), appeal the trial court's order denying their petition to open the default judgment entered in favor of Bertha Stabley and against Appellants. We affirm.

The underlying claim arose when Stabley was struck by a column of shopping carts in a Pathmark parking lot, which were being pushed by a Pathmark employee. Trial Court Opinion ("T.C.O."), 8/5/2013, at 1. The trial court set forth the materially undisputed procedural history as follows:

This case originated with the filing, on September 13, 2012, of [Stabley's] two[-]count Complaint against [Appellants] alleging their failure to properly

train and supervise the referenced Pathmark employee, and to safeguard [Stabley] as a business invitee on their premises due to the employee's failure to maintain control of the carts, to keep a proper lookout, and to issue a warning to [Stabley] that he was pushing the carts in her direction. [Stabley] claimed that her injuries included a pelvis fracture, a sacral ala[ ] fracture, as well as lacerations on her left arm and contusions on her right arm. Returns of Service from the Delaware County Pennsylvania Sheriff's Office evince that [Pathmark] was personally served with a copy of the Complaint on September 25, 2012 at its facility in Boothwyn, Pennsylvania where [Stabley] had been injured, and that [A & P] was personally served with a copy of the Complaint on September 26, 2012 at its office in Harrisburg, Pennsylvania.

Neither of [Appellants] timely responded to the Complaint by mid-October, 2012, or within twenty days of service. It was not until October 26, 2012 that [Stabley's] attorney received a call from one of [Appellants'] legal representative[s] requesting an extension of thirty days from the date of that conversation in which to do so. [Stabley's attorney granted the requested extension.] When no responsive pleading was filed by [Appellants] by November 26, 2012, [Stabley's] counsel, nevertheless, notified [Appellants'] attorney by letter correspondence, mailed ten days later on December 6, 2012, that it was then fifty-one days past the date when their responsive pleading was due, but that he was allowing an additional . . . extension . . . until December 10, 2012, for the response to be filed. Expressed in this letter was the clear warning that: "It is not my desire to take a default judgment in this matter; however, unless I receive your response by Monday, December 10, 2012, I will be forced to file the appropriate praecipe with the Court."

Appellants' responsive pleading to the Complaint was not filed by December 10, 2012. However, [Stabley's] attorney, mindful of the demands of the holidays, waited until January 3, 2013, or 79 days after a response to the Complaint was required to be filed with the court, and 38 days following the November 26, 2012 time extension for doing so, to file and mail the requisite ten day Notice of the Intention to Take Default Judgment to defense counsel, noting therein that "[i]f no Answer to the Complaint is received in this office within ten (10) days of this date, the proper papers will be filed with the court." The certified mail receipt adducing [Appellants'] acceptance of this notice bears the date of January 7, 2013. However, when the responsive pleading went unfiled after ten days, [Stabley's] counsel, in an ongoing spirit of accommodation, waited an additional five days after January 13, 2013 to file a Praecipe to Enter Default Judgment against [Appellants]. Docket entries in the case for January 18, 2013 bear the notations: "Judgment Entered in Favor of the Plaintiff and Against the Defendant for Failure to File an Answer"; "Copy of Ten Day Notice Affidavit"[;] and that notice of the entry of the judgment had been sent on the same date.

Eleven days later, on January 29, 2013, [Appellants] submitted their Petition to Open Default Judgment claiming that they had filed it the day after receiving notice of the entry of judgment against them in the mail as opposed to ten days following the judgment's docketing with the court. Curiously, the date of [Appellants'] purported receipt of that document on January 28, 2013 is 57 days after one of the [Appellants'] attorneys had entered his appearance in this ac-

tion for the defense on December 2, 2013, according to a document submitted by [Appellants] as Exhibit B to their Petition. Moreover, although there is no docket entry of this nature whatsoever in the record, counsel for [Appellants] represented in the certificate of service accompanying their Petition to Open Default Judgment that "a true and correct copy of the foregoing Answer to [Stabley's] Complaint with New Matter was electronically filed with the Court and served via U.S. First Class Mail upon [Stabley's] counsel" approximately eight days previously on January 21, 2013. [Stabley's] attorney denies ever having received a mailed copy of [Appellants'] Petition to Open Default Judgment from defense counsel, and avers that he discovered the existence of the Petition only when he filed a Certificate of Readiness with the Court on March 5, 2013.

T.C.O. at 1–4 (record citations omitted). As implied by the above, it is undisputed that, while no responsive pleading was ever filed of record, a proposed answer was provided as an exhibit to Appellants' Petition to Open Default Judgment.

On April 29, 2013, the trial court held a hearing concerning Appellants' petition to open. There, Appellants' counsel observed that, unlike a truly absent defendant, they had been in contact with Stabley's attorney repeatedly over the months in question, and had participated in settlement negotiations. Counsel for Appellants further attributed their delay to the following factors:

[T]he way our dynamic [works] is that Pathmark sends the complaint up to our main office in New York and that it gets spenced [sic] out to us. Being that I was new at the firm at the time I wasn't personally allowed to answer. We have a managing partner in our New York City office who's licensed to practice down here as well. Unfortunately, his secretary[,] who is no longer with us, it's not the first calendar issue she missed, she missed it. We did move as promptly as possible. [Stabley's counsel] wants to talk about the mail. He's not sure why we got it. I served these papers with him, you know, promptly, yet he— his opposition was not submitted to the Court timely either. He said that he did not receive them. I mailed them the day that they were filed when I ran here to the courthouse to file them, but we have been here to appear. We have all the medical records for his client that he had previously sent to us and we're looking to move forward in this matter. Quite frankly I understand the age of his client, but I'm not sure whether the age will come into [the] determination and we do have a meritorious defense. On our own initial investigations into this is that his client was walking in the rain with her head down with an umbrella in front of her and she walked right in the path in front of a person that was pushing the carts. He has 12 carts. He couldn't stop in time.

T.C.O. at 6 (quoting Notes of Testimony ("N.T."), 4/29/2013, at 10–11). At the hearing, the trial court observed that Appellants still had failed to docket a responsive pleading in the matter, and gave Appellants ten days from the date of the hearing to do so. Nonetheless, Appellants did not file a responsive pleading. *Id.* at 7.

By order entered on April 29, 2013, the trial court denied Appellants' petition to open and upheld the entry of default judgment in favor of Stabley. On May 29, 2013, Appellants filed a timely notice of appeal. On June 7, 2013, the trial court directed Appellants to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellants

timely complied on June 28, 2013. The trial court filed its Rule 1925(a) opinion on August 5, 2013, and this case is ripe for our review.

Before this Court, Appellants raise the following issue:

Did the trial court abuse its discretion in denying [Appellants'] Petition to Open Default Judgment where the evidence established that [Appellants] promptly filed [their] Petition to Open Default Judgment, offered a reasonable explanation for [their] delay in answering [Stabley's] Complaint, provided a meritorious defense to the allegations in its proposed Answer, and there was little to no prejudice to [Stabley]?

Brief for Appellants at 2.

■■■ The trial court's review of a petition to open, and our review of a trial court's order addressing same, are governed by the following standards:

A petition to open a default judgment is addressed to the equitable powers of the court and the trial court has discretion to grant or deny such a petition. The party seeking to open the default judgment must establish three elements: (1) the petition to open or strike was promptly filed; (2) the default can be reasonably explained or excused; and (3) there is a meritorious defense to the underlying claim. The court's refusal to open a default judgment will not be reversed on appeal unless the trial court abused its discretion or committed an error of law. An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. Moreover, this Court must determine whether there are equitable considerations [that] weigh in favor of opening the default judgment and allowing

the defendant to defend the case on the merits. Where the equities warrant opening a default judgment, this Court will not hesitate to find an abuse of discretion.

*Castings Condominium Ass'n, Inc. v. Klein,* 444 Pa.Super. 68, 663 A.2d 220, 222–23 (1995) (internal quotation marks and citations omitted).

We begin by noting that it is undisputed that Appellants have established the first prong of the relevant test. The trial court so found, and Stabley does not contest the trial court's determination in this regard. *See* T.C.O. at 11.

The trial court, however, found fault with regard to both the second and third prong. Specifically, the trial court found Appellants' ongoing delay in responding to Stabley's complaint to have been unreasonable, notwithstanding Appellants' counsel's attribution of the delay to the involvement of a national law firm representing a large corporation combined with the failure of an administrative assistant properly to calendar the relevant deadline(s). *See id.* at 11–14. The trial court further found that Appellants' proposed answer and new matter contained only boilerplate allegations, and therefore failed to make an adequate demonstration of a meritorious defense to the underlying claim. *Id.* at 14.

■■ We find that Appellants' answer and new matter satisfied the third prong of the applicable test. Supporting this conclusion, we note that Stabley's complaint, at approximately two pages in length, itself was short on detail. In Appellants' proposed new matter, they asserted that "[t]he alleged injuries of the plaintiff were the result of plaintiff, Bertha Stabley's, own negligence, which exceeded any negligence of the answering defendants, ... and, therefore, pursuant to the Pennsylvania Comparative Negligence Act,

the plaintiff's claims are barred." Appellants' Proposed Answer to the Complaint of [Stabley] With New Matter, at 4 ¶ 13; *see id.* at 5 ¶¶ 14–15, 6 ¶ 20 (same). Moreover, at the April 29, 2013 hearing on Appellants' petition to open, counsel for Appellants elaborated that their investigation had indicated that Stabley "was walking in the rain with her head down with an umbrella in front of her and she walked right in[to] the path in front of a person that was pushing the carts. He has 12 carts. He couldn't stop in time." N.T. at 10–11. As well, Appellants fairly call our attention to our decision in *Attix v. Lehman,* 925 A.2d 864 (Pa.Super.2007), in which we accepted a broadly worded answer as sufficient to set forth a potentially meritorious defense, noting that "[t]here is no requirement that the answer attached to a petition to open be any more specific than the typical broad answer to a complaint." *Id.* at 867. We find that the content of Appellants' proposed answer and new matter, read in tandem with their assertions at the April 29 hearing, sufficed to set forth a potentially meritorious defense. Thus, the trial court abused its discretion in ruling otherwise.

■ This leaves us with only the question of the reasonableness of Appellants' continuing delay in responding to Stabley's pleading. Appellants' counsel presents two core arguments on this point, one couched generally in the way this case percolated through its firm's and its clients' administrative apparatus and chains of command; and the second based upon the proposition that the three relevant factors, viewed collectively and in service of equity, so militate in favor of opening the judgment that the trial court abused its discretion in failing to do so. We consider these in turn.

Appellants are vague in their argument regarding the cause for their serial delays. They submit as follows:

> [T]he default judgment was almost entirely on account of clerical errors by a former firm employee, rather than a deliberate decision not to defend. Had the deadline to file the Answer been appropriately placed in the firm's diary system, an Answer would have been filed prior to the entry of the default being filed. Further, [Stabley's] counsel knew, even prior to filing the Complaint, based on settlement discussions with [Appellants], that [Appellants] intended to appear and vigorously defend this matter, if [they were] not able to find an amicable resolution.

Brief for Appellants at 10. To much the same effect, Appellants assert that the cause of their delay was "an accidental oversight and completely unintentional and inadvertent." *Id.* at 9. Thus, "[t]he [t]rial [c]ourt abused its discretion in finding that [Appellants] did not have a reasonable excuse, especially when viewed in the context of the case chronology and facts and the professional courtesies [Stabley's] counsel previously extended and his express knowledge that [Appellants' law firm] intended to defend [Appellants'] interests." *Id.*

This argument is weak at best. Even accepting, as this Court not infrequently has done, the occurrence of a law firm's clerical error as sufficient excuse for delay,[1] the most Appellants have offered at

---

1. *See Balk v. Ford Motor Co.,* 446 Pa. 137, 285 A.2d 128 (1971) (ruling that court did not abuse discretion in striking default judgment where insurer lost client's court papers and prejudice lacking); *Duckson v. Wee Wheelers,* *Inc.,* 423 Pa.Super. 251, 620 A.2d 1206 (1993) (deeming insurer's delay reasonable excuse); *Provident Credit Corp. v. Young,* 300 Pa.Super. 117, 446 A.2d 257 (1982) (*en banc* ) (forgiving delay when disadvantaged party was aban-

any point that we can find is that a former employee of the law firm—one who has not testified or furnished an affidavit regarding her role in these events—failed to calendar a particular response date. This excuse rings hollow, in light of the numerous communications regarding Appellants' failure to respond that Stabley's counsel provided directly to responsible attorneys representing Appellants. Indeed, were a lone calendar error to blame for Appellants' intransigence, one would expect that Stabley's counsel's several reminders would have alerted Appellants' counsel to the problem, giving them an opportunity to respond before Stabley took a default judgment.

A single calendaring error cannot explain what we count as four distinct delays. First, Appellants failed to file a timely response to the complaint. Second, Appellants failed to file a response within the thirty-day extension that Stabley's counsel granted them in response to their request. Similarly, they failed to avail themselves of the additional four days Stabley's counsel informed them he would allow after that thirty-day period expired. Third, when Stabley gratuitously declined to take action until twenty-four days later, allowing for the holidays, Appellants once again failed to file a response. Thereafter, Stabley's counsel filed a notice of his intention to seek a default judgment. He waited fifteen days, rather than the requisite ten, before filing a praecipe to enter default. Appellants' failure to respond to this notice within those fifteen days constituted the fourth occasion upon which Appellants failed duly to respond to Stabley's complaint.

There is a measure of irony in Appellants' somewhat opaque reference to Stabley's counsel's "professional courtesies ... previously extended" to Appellants' counsel. Brief for Appellant at 9. By our lights, these repeated courtesies, both solicited and unsolicited, serve only to underscore the dilatory nature of Appellants' continued failure to respond, especially inasmuch as they responded promptly upon learning of the entry of a default judgment. This evinced their ability to mobilize quickly when it suited them to do so. For these reasons, Appellants' other proffered excuses also are inadequate to establish a reasonable basis for their delay in the face of Stabley's counsel's repeated formal and informal reminders of their delinquency.

Appellants also seek to establish that broader equitable principles require that the default judgment be opened. Appellants observe that, "in addressing whether the[ ] three factors have been shown, the trial court shall weigh the equities of the case and balance the prejudice to the parties." Brief for Appellants at 5 (citing, inter alia, Castings Condo. Ass'n, supra; Duckson v. Wee Wheelers, Inc., 423 Pa.Super. 251, 620 A.2d 1206, 1212 (1993)). In particular, Appellants refer us to our decision in Provident Credit Corp. v. Young, 300 Pa.Super. 117, 446 A.2d 257 (1982) (en banc ).

Provident Credit, among other cases, provides broad language abstractly favorable to Appellants' plea for clemency from the consequences of their own failure to file a timely responsive pleading. In Provident Credit, we explained the consider-

doned by multiple attorneys for want of ability to pay); cf. Jung v. St. Paul's Parish, 522 Pa. 167, 560 A.2d 1356 (1989) (holding that non pros should have been opened to parties were engaged in settlement negotiations and rule to file complaint was intermin-

gled with discovery requests); Manson v. First Nat'l Bank in Ind., 366 Pa. 211, 77 A.2d 399 (1951) (finding refusal to open non pros abuse of discretion where both parties failed to act diligently and no prejudice to defendant shown).

ations overlaying the specific, three-part test regarding the opening of default judgments as follows:

> A petition to open a judgment by default is addressed to the equity side of the court:
>
> > In determining whether a judgment by default should be opened, we must ascertain whether there are present any equitable considerations in the factual posture of the case which require that we grant to a defendant against whom judgment has been entered an opportunity to "have his day in court" and to have the cause decided upon the merits. In so doing, we act as a court of conscience.
>
> *Raymond J. Brusco Funeral Home v. Sicilia,* 277 Pa.Super. 115, 419 A.2d 688, 692 (1980) (quoting *Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144, 147 (1971)). In an assumpsit case, in exercising its equitable powers the court must look to the promptness with which the petition to open was filed, the reason given for the default, and the merits of the defense asserted. *Balk v. Ford Motor Co.,* 446 Pa. 137, 285 A.2d 128 (1971). Because the decision whether to open a judgment is an equitable one, it depends on the particular facts of each case; there are no bright line tests, *Quatrochi v. Gaiters,* 251 Pa.Super. 115, 380 A.2d 404 (1977), and the cases are not easy to reconcile. *Duffy v. Gerst,* 286 Pa.Super. 523, 429 A.2d 645 (1981).

446 A.2d at 260–61 (citations modified).

After reviewing the three-part test's complicated nature, and emphasizing the importance of considering "*all* of the circumstances of the particular case," *id.* at 264 (emphasis in original), we elaborated on the necessarily fluid, encompassing nature of the equitable inquiry:

> We are not suggesting that the tripartite test is not important. The test will often provide a ready determination—a navigator's "quick fix"—of where the equities lie. For example, in a case where no attempt has been made to explain the default or delay, or where, in an assumpsit case, no defense has been pleaded, or only one clearly without merit, it is difficult to imagine that the equities would favor opening the judgment. But where some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a watertight compartment, to be evaluated in isolation from other aspects of the case. Instead, the court should consider each part in the light of all the circumstances and equities of the case. Only in that way can a chancellor act as a court of conscience.

*Id.* Appellants cite *Duckson* to similar effect. Brief for Appellants at 6.[2]

---

**2.** Notably, in the closely related context of non-pros judgments, to which we apply a materially similar three-part test, our Supreme Court has offered these observations, which constitute the other edge of the sword Appellants wield in an effort to open the default judgment against them:

> A request to open a judgment of non-pros is by way of grace and not of right and its grant or refusal is peculiarly a matter for the trial court's discretion. We are loath[ ] to reverse the exercise of the court's equitable powers unless an abuse of discretion is clearly evident. *Goldstein v. Graduate Hosp. of the Univ. of Penna.* [441 Pa. 179], 272 A.2d 472 (Pa.1971); *Brigham v. Eglin's of Phila.,* 406 Pa. 99, 176 A.2d 404 (1962); *Mazer v. Sargent Elec. Co.,* 407 Pa. 169, 180 A.2d 63 (1962). Seeing that the request to open a judgment of non-pros is directed to the conscience of the court, the court is *required* to balance the equities and to deny the petition even where all elements coalesce if the granting of relief would cause undue hardship or prejudice to the opponents. *McBride v. Rome Twp.,* 347 Pa. 228,

Based upon these cases, which Appellants make no effort to harmonize with the instant case based upon their facts and circumstances, Appellants maintain that "the trial court strictly applied the three-factor test for opening a default judgment in the abstract, and, in doing so, concluded that [Appellants] failed to satisfy two of the three factors." *Id.* "Here," Appellants reiterate, "the default judgment was entered because of a calendaring error by a former employee of this [law] firm, which was inadvertent and accidental, despite [Stabley's] counsel['s] knowledge since October 2013 that [Appellants] intended to appear." *Id.*

Once again, Appellants proffer an excuse for their delay that explains, at best, one instance of delay, not the several that are evident in the history of communications and filings by Stabley. We recognize that our caselaw regarding default judgments tends to focus on concerns regarding the improper delay of a due airing of claims due to a defendant's failure to appear or other inappropriate impediment. However, nothing in our caselaw suggests that counsel for the plaintiff's awareness that counsel for the defaulting party has engaged the matter to some minimal extent renders improper plaintiff's counsel's eventual decision to seek a default judgment. This is especially true when counsel for the defendant, with whatever degree of informal communication with the other side, ignores several invitations to engage the litigation by pleading, including failing to respond to a ten-day notice of default. Under such circumstances, the unrespon-sive party cannot reasonably claim unfairness when plaintiff's counsel finally seeks a default judgment.

In short, Appellants have so utterly failed to satisfy the second prong of the applicable test that we cannot conclude that the trial court abused its discretion. While cases like *Provident Credit* and *Duckson* certainly counsel trial courts to be cautious in denying a party its day in court by entering a default judgment, we find that Appellants' conduct in this case fits *Provident Credit's* allusion to circumstances in which "no attempt has been made to explain the default or delay." 446 A.2d at 264. As evinced by our account of Appellants' brief, one clerical error is all Appellants have to offer by way of explanation for at least four separate failures to file a responsive pleading. Given Stabley's counsel's manifest patience and several instances of gratuitous forbearance, one clerical error is entirely insufficient to establish that Appellants' delay had any reasonable basis whatsoever.

The trial court also fairly observed that Appellee in this case was approaching her ninetieth birthday and undisputedly had suffered serious injuries. When Stabley's counsel's repeated, courteous offers to forebear were met by additional failures timely to respond, Appellants invited a default judgment. They reaped what they sowed. Thus, weighing the equities in a more open-ended fashion, as Appellants ask us to do, leads us to the same result. *See Allegheny Hydro No. 1 v. Amer. Line Builders, Inc.*, 722 A.2d 189 (Pa.Super.1998) (finding no reasonable excuse

32 A.2d 212 (1943); *Pierce to Use of Snipes v. Kaseman*, 326 Pa. 280, 192 A. 105 (1937); *McFadden v. Pennzoil Co.*, 326 Pa. 277, 191 A. 584 (1937); *Kelber v. Pittsburgh [Pittsburg] Nat'l Plow Co.*, 146 Pa. 485, 23 A. 335 (1892). *Narducci v. Mason's Discount Store*, 518 Pa. 94, 541 A.2d 323 (1988) (citations modified;

emphasis in original). Thus, while it is true that we have opined that, even given a limited showing vis-à-vis the three-prong test, when equity so requires we may open a judgment, it also is true that even given a reasonable showing as to all three prongs, we will **not** open a judgment when the equities strongly militate against our doing so.

where defendant's counsel failed to file responsive pleading or response to notice of default based upon assumption that plaintiff would grant extension to respond); *cf. Davis v. Burton,* 365 Pa.Super. 160, 529 A.2d 22 (1987) (refusing to open default where counsel unreasonably believed that entry of appearance was sufficient to prevent entry of judgment).

We express no opinion regarding whether the trial court might, in its discretion, fairly have granted Appellants' petition to open. However, under these circumstances, we cannot conclude that the trial court abused its discretion in declining to do so.

Order affirmed.

Gantman, J. concurs in the result.