Winner *v.* Messinger, Appellant.

Argued September 30, 1949. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Herbert F. Laub,* with him *Laub & Laub,* for appellant.

*John Field Oldt,* with him *Fox & Oldt,* for appellee.

OPINION BY DITHRICH, J., November 15, 1949:

Appellee, trading as Rural Gas Company, hereinafter referred to as Gas Company, is in the business of selling bottled gas. Through its dealers it also leases

the necessary equipment—pipes, pressure controls, etc. —which regulates the flow of gas from the replaceable tanks into the customers' heating apparatus. A. L. Greenzweig, one of the Gas Company's dealers, arranged for the installation and service of the 99 sets of equipment, which are the subject of this action in replevin. Under the terms of Greenzweig's franchise agreement and the customers' leases the equipment remained the property of the Gas Company.

On April 27, 1948, Greenzweig entered into an agreement with appellant, Messinger, purporting to sell "all of his bottled gas accounts, less tanks, for the sum of Twenty Dollars ($20.00) each . . ." The consideration ($2000.00) was deposited in escrow and is still intact. Messinger then began servicing the various accounts.

When the Gas Company found this out its manager, Finkler, telephoned Messinger and told him that the customers and the equipment belonged to the Gas Company rather than Greenzweig and that Messinger had no right to buy them. His reply was that it was all right because he had a release from Greenzweig.

On August 18, 1948, the writ and complaint, endorsed with a notice to plead, were served on Messinger. The following day Messinger and Greenzweig conferred with Greenzweig's attorney and showed him the writ. No appearance was entered or answer filed, and on September 9, 1948, default judgment was entered in the amount of $1980.00.

On September 22, 1948, Messinger petitioned the court below to open the judgment; depositions were taken, the petition was denied, and this appeal followed.

The rule of law applicable to such cases is clearly set forth in *Quaker City Chocolate and Confectionery Co. v. Warnock Bldg. Assn.*, 347 Pa. 186, 190, 32 A. 2d 5, as follows: "Petitions to open judgments by default are addressed to the trial court's sound discretion and are essentially equitable proceedings ruled by equitable prin-

ciples: Horn v. Witherspoon, 327 Pa. 295 [192 A. 654]; relief will be given where such a petition is promptly filed, the default reasonably explained or excused, and a defense shown to exist upon the merits: Pinsky v. Master, 343 Pa. 451, 452 [23 A. 2d 727]; Fuel City Mfg. Co. v. Waynesburg P. C., 268 Pa. 441 [112 A. 145]."

The court below based its decision on the ground that appellant, although he acted promptly, did not excuse his default and did not show a meritorious defense. In addition the court felt that the existence of the $2000.00 escrow account fully protected him from any possible harm or injustice. Under the circumstances, did the learned court abuse its sound discretion?

*Mielcuszny v. Rosol*, 317 Pa. 91, 93, 94, 176 A. 236, defines the term as applied to opening judgments, as follows:

". . . An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, . . . as shown by the evidence or the record, discretion is abused. . . .

"To open a judgment there must be more than a mere conflict of evidence; it is not a case of oath against oath, but there should be such evidence as carries conviction as to truth, so that a chancellor in forming his deliberate judgment is impressed with the fact that the ends of justice would be met by opening the judgment and submitting the matter to a jury. . . ." See, also, 7 Stand. Pa. Prac. 34, §40; *Sugarman v. Baldini*, 161 Pa. Superior Ct. 136, 139, 53 A. 2d 874.

The record is sufficient to support an inference that Messinger felt that, since he had never possessed any of the goods sought to be replevied, it was not necessary for him to make any formal explanation of his failure to answer the complaint; and it would answer the criticism of the learned court below that his "failure to answer the complaint did not arise out of . . . a lack of

knowledge" of his duty to make formal answer. Furthermore, Greenzweig's attorney, J. L. Davis, Esquire, testified that Greenzweig and Messinger came to his office on August 19, 1948, and *showed him the writ and complaint and left the writ with him.*

Paragraph 8 (a) of appellant's petition contains the gist of his asserted defense. It is as follows: "He did not have possession of the goods sought to be replevied, neither did the Sheriff replevy any of them in the possession of your petitioner." It was disposed of by the court below in the following manner: "Defendant's first point, that the goods were not in his possession might be a proper defense if the word possession could be construed to . . . [exclude] constructive possession. That construction cannot be applied in this case, however, in the light of the testimony offered in the depositions. It was not contemplated that the defendant had the goods in his own hands. *The property was in the custody of customer-lessees."* (Emphasis added.)

An action of replevin cannot be maintained against one not in the actual or constructive possession of the property sought to be recovered, so that the defendant, if judgment be rendered against him, may make delivery thereof to the plaintiff. 10 Stand. Pa. Prac. 601, §41; 46 Am. Jur. 21, §33. That proposition is so plain as to require little discussion. Though the question of title to personal property may be litigated in replevin, if properly brought, the action is a possessory one brought by complainant to recover possession of personal property. *Sloan v. Merchants' Savings and Trust Co.,* 160 F. 654 (CCA 3c); *English v. Dalbrow,* 1 Miles 160 (D. C. of Phila.).

It is equally well settled that plaintiff must have the right of immediate possession. In the leading case of *Harlan v. Harlan,* 15 Pa. 507, 513, the rule is thus stated: "It is well settled as a general principle, that in Pennsylvania, replevin lies wherever one man claims

goods in the possession of another, and this, whether the claimant has ever had possession or not, and whether his property in the goods be absolute or qualified, *provided he has the right of possession."* (Italics added.)

Title alone is not enough. In *White Co. v. Union Transfer Co.,* 270 Pa. 514, 515, 113 A. 432, the Court, speaking through Mr. Justice KEPHART, said: "The bailor can recover only by showing right of possession, arising through some breach of the contract."

In *Heilman v. McKinstry,* 18 Pa. Superior Ct. 70, having noted that the testimony showed title in the plaintiff-bailor and possession in the defendant-bailee, this Court said (p. 73): "Having shown this, it was incumbent upon the plaintiff to show further that there was a breach of the contract of bailment on the part of the defendant, before he would be entitled to the return of the property."

Against that background the situation of the 99 installations of regulating equipment must be considered. Who had title? Who had the right to immediate possession? Two writings are important. Petitioner's Exhibit H is the dealer franchise agreement between Greenzweig and the Gas Company. It provides, inter alia: "5. Tanks *and Equipment* at all times *are to remain the property of the Company* and when tanks are emptied they are to be brought back to dealer's warehouse to be picked up by the Company. (Emphasis added.) . . . 9. The rights herein granted to Dealer are personal rights and no assignment of any rights under this agreement by Dealer shall be binding upon the Company without its written consent."

Respondent's Exhibit No. 1 is a copy of the customer's service and equipment contract used by Greenzweig. Important provisions of it are: "1. The Company agrees to *lease to the Customer,* Rural Gas *Equipment* and to install said equipment . . . The term of this lease shall be for one (1) year from the date hereof

and continue thereafter from year to year so long as the Customer purchases from the Company . . . [all his bottled gas and at least one tank a year]. *Upon the termination of this lease* by reason of the failure of the Customer . . . [to buy a tank a year], or for any other reason, the *Company shall have the right to immediately repossess said equipment* . . . 2. *Customer agrees to pay the Company* the sum of . . . . . . . . . Dollars *as rental for said equipment,* . . . 6. *This lease cannot be assigned* by the Customer without written consent of the Company or their authorized agent." (Emphasis added.)

From the record it is clear that title to the equipment remained in the Gas Company. It is equally clear that the right to immediate possession is *not* in the Gas Company. The customer-bailee, who is complying with the terms of his service and equipment contract, supra, is the *only* person who has the right of immediate possession. It necessarily follows that the Gas Company—without showing a specific breach of the contract of bailment—has no standing to maintain an action of replevin against the customers who have actual possession, as bailees, of this equipment. A fortiori, the Gas Company has no standing to bring an action of replevin against appellant, who is not in a position to deliver the goods in the event that judgment be rendered against him.

The court below took the position that no injustice would be done for the following reason: "Defendant appears to be fully protected by the deposit agreement which he made at or about the time he purchased the gas accounts from A. L. Greenzweig. The $2,000.00 deposit is in virtually the same amount as plaintiff's claim. It is based on 100 accounts at $20.00 each, and it appears under all facts of the case that this sum is presently available with which to satisfy the judgment."

That, however, does not take into consideration the full effect of the disputed transaction. Greenzweig pur-

ported to assign certain rights to Messinger which, by the terms of his franchise, were specifically made non-assignable. Whether or not he purported to sell the equipment—to which he had no title—is open to some question. Messinger testified that he bought the equipment. Greenzweig would not say that he "sold" the equipment, but admitted that the equipment was "involved" in the agreement. At any rate Greenzweig had nothing he could sell. If this judgment is allowed to stand Messinger will have purchased by operation of law 99 sets of equipment which are useless to him without a dealer's franchise.

Order reversed and judgment opened.