392 A.2d 806

QUEEN CITY ELECTRICAL SUPPLY CO., INC.

v.

SOLTIS ELECTRIC CO., INC., Defendant, the Cement National Bank, Garnishee.

Appeal of the CEMENT NATIONAL BANK.

Superior Court of Pennsylvania.

Argued Dec. 9, 1977.

Decided Oct. 20, 1978.

306

Irving W. Coleman, Allentown, for appellant.

Robert M. Davison, Bethlehem, for appellee, Queen City Electrical Supply Co., Inc.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Lehigh County, refusing to open a default judgment.

Plaintiff-appellant, Queen City Electrical Supply Co., Inc. obtained a $24,759.17 judgment by confession in an assumpsit action against Soltis Electric Co., Inc., principal defendant here. Queen City sought to execute the judgment by attaching an account Soltis had with appellant, The Cement National Bank. A writ of attachment execution and garnishee interrogatories were served on the bank on August 12, 1974. On August 15, the bank sent the interrogatories to its attorney, Jerome W. Burkepile, along with the informa-

tion necessary to answer them. Burkepile prepared the answers and gave them to the bank on August 21 for signature and return. The answers were signed by an officer of the bank and returned to Burkepile for filing the next day.

Burkepile, however, was in poor health at the time, and was working only part time with the result that the deadline for filing, September 3, 1974, passed without the answers having been filed. On September 4, 1974, at 9:51 A.M., Queen City took a default judgment in the amount of $24,759.17, pursuant to Pa.Rule of Civil Procedure 3146(a). The bank was notified, Burkepile was contacted and Burkepile filed the answers the next day (September 5, 1974). The answers revealed that the account contained $1,762.56.

The same day, Soltis was adjudicated a bankrupt in proceedings in the United States District Court for the Eastern District of Pennsylvania.

Attempts by Howard S. Epstein, the attorney who had taken the default judgment on behalf of Queen City, to contact Burkepile regarding the default judgment were unsuccessful. Burkepile stopped coming to work in early October, was hospitalized October 11 and died on November 8, 1974.

Howard E. Snyder, an attorney belonging to the same firm as Epstein, was appointed as Trustee in Bankruptcy for Soltis. He sent a letter to the bank on December 11, 1974 asking for the balance in the Soltis account.

The bank, uncertain as to whom it owed the money, consulted William A. Steckel, the attorney who was representing Burkepile's estate and who had also assumed the responsibility of disposing of Burkepile's unfinished legal business. His response to the bank, by letter of January 16, 1975, was as follows.

"This will confirm my telephone conversation in the above matter after a conversation with Attorney Howard S. Epstein representing Queen City Electrical Supply Co., Inc. There is no question in my mind that Howard E.

Snyder, Trustee in Bankruptcy for Soltis Electric, Inc., is entitled to the proceeds of any bank account in the name of Soltis Electric Company, Inc., held by The Cement National Bank, and that such proceeds can safely be paid to the Trustee as noted.

"However, this will in no way affect the judgment to No. 1088 June Term, 1974, entered on September 4, 1974, against Soltis Electric Company, Inc. and Cement National Bank, Garnishee, in the amount of $24,759.17, which was entered after twenty days had expired from the date of service of an attachment execution with Interrogatories on Cement National Bank.

"Several courses are open to the Bank at this time. The first would be a Petition to open the judgment against the Bank on the grounds that the payment, if it had been made, would have been a preferential one voidable by the subsequently appointed Trustee in Bankruptcy. This, however, requires positive action and with attendant publicity on the part of the Bank. The second course would be to do nothing since Attorney Epstein has assured me he will contact me before moving in the matter, if he, in fact, will move at all. I believe this course would be advisable at the moment, since the interpretation of Rule 3148(b), providing for execution "generally" on the judgment, in my opinion permits such execution only to the extent of the amount of the deposit and not to the entire amount of the judgment. It is the interpretation of this Rule that presently is delaying any action on the part of Attorney Epstein.

"If there is anything further that you desire at this time, please advise."

The proceeds of the account were, accordingly, paid to the Trustee. Epstein, however, did not share Steckel's interpretation of Rule 3148(b)[1]; on January 21, 1975, he wrote to Steckel as follows.

---

1. Rule 3148(b) reads as follows: "If a money judgment is entered against the garnishee the plaintiff may have execution against the garnishee generally for the amount of the judgment."

"With reference to the above-captioned matter, please be advised that my research into the Rules regarding the entry of judgment against a garnishee for failure to file Answers to Interrogatories within the requisite period of time indicates that such a judgment imposes a general liability upon the garnishee for the amount of the judgment against the debtor. Therefor, I cannot agree to dissolve the attachment.

"I would be happy to discuss settlement of the matter with you at any time reasonably convenient."

Steckel waited until May of 1976 to inform the bank of this letter when he received another letter from Epstein, threatening execution if the judgment was not paid. On May 18, 1976, Steckel called the bank, told it about the letter, and advised it that his representation of the Burkepile estate and the bank was a possible conflict of interest. He suggested that it obtain other counsel, which it did on the same day. The bank's new lawyer (present counsel) contacted Epstein, informing him of his intention to file a petition to open. It was stipulated that laches would not be claimed for the period from May 18, 1976 to June 15, 1976, the day the petition was filed.

The criteria for opening a default judgment in an assumpsit action, as stated in *Balk v. Ford Motor Company,* 446 Pa. 137, 140, 285 A.2d 128, 130–31 (1971) are as follows:

" . . . [A] petition to open a judgment is a matter of judicial discretion, is an appeal to the court's equitable powers, and is to be exercised only when three factors coalesce: (1) the petition has been promptly filed; (2) a meritorious defense can be shown; (3) the failure to appear can be excused[.]"

Instantly, there is no serious dispute that the default was excusable and that a meritorious defense has been shown. The issue is whether the 20-month delay in filing the petition to open can be considered "prompt" under the circumstances of this case.

■ The bank's position is that in view of the bankruptcy and the advice it received from Steckel the delay was justified. We agree.

The bank was legitimately confused as to whether Queen City or the bankruptcy trustee was the proper recipient of the funds in the account. Rather than ignore the problem, it sought legal advice. It was told, in essence: (1) that although technically the judgment still existed, once the trustee was paid, there would no longer be anything on which it could be executed; (2) that opposing counsel was not presently disputing this analysis. For the bank to conclude, on the basis of this letter, that the judgment was a nullity, and that a petition to open would be superfluous, would be entirely reasonable. Although Steckel's statement that the judgment of $24,759.17 was not affected appears to be inconsistent with the statement as to its collectibility, we are of the opinion that the statements could be reconciled in the mind of a layman by reasoning that the amount had been set at $24,759.17 because that was the only figure available to the official entering the default judgment and that the chief significance of the amount was to indicate the *maximum* the plaintiff could get from the account. To reject Steckel's analysis, the bank would have to believe that Queen City was allowed to collect twice, once on the judgment and once from the estate.[2]

Queen City compares the bank's position to that of a defaulted defendant who fails to petition to open a judgment on the basis of legal advice that he is judgment proof, citing *Nevils v. Chernitsky,* 244 Pa.Super. 501, 368 A.2d 1297 (1976). See also *Kanai v. Sowa,* 109 Pa.Super. 426, 167 A. 429 (1933). These cases hold that such advice fails to excuse late filing of a petition to open.

A defendant who fails to promptly seek to open a judgment because he believes his poverty gives him an escape hatch is entitled to little consideration from the courts. A defendant who believes, as did the bank, that he has fulfilled

**2.** We do not decide the extent to which Steckel's analysis was accurate.

his legal obligations and that as a result someone else (here, the trustee in bankruptcy), has become the source to which the plaintiff must look for recovery stands on a different footing. Compare *Winner v. Messinger,* 165 Pa.Super. 507, 510, 69 A.2d 172, 174–75 (1949), where this court found an abuse of discretion in a trial court's failure to open a default judgment in a replevin action; the reason was as follows.

"The record is sufficient to support an inference that [defendant] felt that, since he had never possessed any of the goods sought to be replaced, it was not necessary for him to make any formal explanation of his failure to answer the complaint[.] . . .

" . . . [T]he Gas Company has no standing to bring an action of replevin against appellant, who is not in a position to deliver the goods in the event that judgment be rendered against him."

In *Goodfriend v. Diamond Chemical Company,* 196 Pa.Super. 319, 175 A.2d 537 (1961) we affirmed, per curiam, the lower court's decision to open a default judgment, on the opinion below, reported at 25 Pa.D. & C.2d p. 321. The court said at 324:

"Where a default judgment is entered against a garnishee for failure to file a report, a court should not hesitate to exercise its discretion to grant relief where equitable circumstances exist, since the garnishee becomes liable to plaintiff on a cause of action to which he is a stranger[.] [Emphasis in original.]"

Here, all the equitable circumstances point to the conclusion that the lower court abused its discretion in refusing to open the judgment. Plaintiff snapped up a $24,759.17 judgment against an innocent stakeholder who owed no more than $1,762.56 to anyone and may not (in view of the bankruptcy) have owed that entire amount to plaintiff.

The order is reversed and the judgment is opened.

JACOBS, President Judge, concurs in the result.

SPAETH, J., files a dissenting statement.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I dissent for the reasons stated in the lower court's opinion.