446 A.2d 257

**PROVIDENT CREDIT CORPORATION, a Corporation,**

v.

**Charles Thomas YOUNG, Jr., Joan Young and Ethel B. Davis.**

**Appeal of Ethel B. DAVIS.**

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed May 14, 1982.

Petition for Allowance of Appeal Denied Sept. 16, 1982.

118

Theodore Clattenburg, Jr., Philadelphia, for appellant.
Alan B. Liss, Philadelphia, for appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM and BROSKY, JJ.

SPAETH, Judge:

This appeal is from an order denying a petition to open or strike a default judgment. Appellant does not argue that the lower court erred in refusing to strike the judgment, but she does argue that the court abused its discretion in refusing to open the judgment. We agree and therefore reverse.[1]

–1–

In no sort of case is closer attention to the facts required than in a case arising on petition to open judgment. Here the facts may be found in appellant's deposition, which was the only testimony, the petition and answer, and the docket entries.

Appellant is an unemployed widow with a 10th grade education. On December 20, 1971, at her brother's request, she went to the Peter James Buick Agency in Ardmore so that she might serve as co-signer for an automobile her brother was interested in buying. Appellant drove separate-

---

1. Appellant has also appealed from the lower court's order granting appellee's motion for a protective order with respect to her second set of interrogatories, which were filed in support of her petition to open. Since we have concluded that the petition to open should have been granted, even without answers to the second set of interrogatories, we need not consider the propriety of the protective order. We note, however, that since the order was entered incident to the petition to open the judgment, it is inapplicable to any discovery in which appellant may wish to engage with respect to the merits of the underlying action.

ly in her own car because she was on her way to Washington to visit another brother, who was ill. She was in a hurry and did not have much time to spend at the agency. While her brother was out on the lot looking at automobiles, appellant was asked to sign some papers in blank. She was told that if her brother did not buy an automobile, the papers would be torn up. She understood that being a co-signer meant that if her brother did buy an automobile but then could not be found, she would be asked to find him, and that her availability to find her brother was why the person she was talking to was interested in the fact that she owned a house and did not move about the city.

Appellant signed the papers, in blank, and continued on her trip to Washington. She was not given copies of the papers she had signed, nor were they sent to her later. The papers included a motor vehicle installment sale contract, which named Peter James Buick as the seller and provided for assignment to appellee, and a judgment note and federal truth-in-lending disclosure statement, both of which named appellee as the lender, and neither of which gave any indication of having been executed in connection with the installment sale of an automobile.

Appellant's brother fell behind in his payments almost immediately. On August 1, 1972, he and his wife were served with a complaint in assumpsit, and on August 25, a default judgment was taken against them. The complaint also named appellant as a party defendant, and on September 7, it was served on appellant by being left with an adult person—a baby-sitter—who was in charge of her residence, and on October 3, 26 days later, a default judgment was taken against her. The complaint made no reference to the fact that the judgment note that appellant had signed had been given in connection with the installment sale of an automobile. Damages were assessed at $4,100.90—the unpaid balance of the note—plus a collection charge of $738— 18% of the amount due, as provided for in the note—for a total of $4,838.90.

Appellant testified that she never received the complaint. She explained that at the time it was served—as shown by the sheriff's return—she and her daughter, who lived with her, were at church. At some point the baby-sitter told appellant's daughter that a man had come with papers for Charles and Joan Young—appellant's brother and sister-in-law, whose names appear on the complaint ahead of appellant's—and that she had refused to take them. The first appellant knew of any proceeding against her was when she received in the mail a card requesting her to call appellee. When she called she was told that her brother had failed to make his payments, and that because she had signed for the autombile they could go after her without making any effort to find him, and her home was going to be taken from her.

Appellant went to see a lawyer, Allan Getson, who had evidently previously represented her in some matter, but he said that he could not represent her because he was representing her brother in another case. Appellant immediately went to see another lawyer with offices in the same building, Cassandra Maxwell Birnie. Birnie evidently made inquiries on appellant's behalf, determined the amount that would be necessary to bring her brother's payments up-to-date, advised her to try to get her brother to pay that amount, and looked into the status of an attachment by appellee of the proceeds of a personal injury action brought by appellant's brother. Birnie also told appellant that going to court to try to get the judgment against her opened would cost a great deal of money. Birnie did not refer appellant to Community Legal Services, nor explain that if she were found eligible for representation by Community Legal Services, she would be able to file a petition to open the judgment without incurring legal expenses that would be difficult or impossible for her to pay.

Twice during 1973 and once in 1974 appellant received notification that various amounts, totaling $2,140.98, had been paid to appellee on her brother's behalf. She believed that two of these payments resulted from actions taken in her interest by Birnie, and that the 1974 payment, which

was $1,261.92, was "going to be paid over with the provision that the house would be returned back to me." N.T. 19. In both respects, appellant was mistaken. The payments had resulted from attachments filed by appellee, and by the time she received notice of the 1974 payment, her house had already been sold. Specifically, the sheriff had sold it on February 4, 1974, on appellee's writ of execution, for $800 to the attorney on the writ. The assignee of the sale, one Carl Inker, received the sheriff's deed to appellant's house on September 10, 1974, but even before receiving his deed Inker had filed a complaint in ejectment, which was served on appellant sometime in August 1974.

After being served with the complaint in ejectment appellant tried to consult Birnie. When she was unsuccessful, she consulted a Lieutenant Kirby at the Naval Base,[2] who gave her the name of another lawyer. When he proved to be on vacation, appellant was referred to Richard Carl Smulker. Smulker agreed to represent her but said she would first need to obtain her file from Birnie, in the course of doing which she learned that Birnie had died. It is not clear just what Smulker did on appellant's behalf, but the record does include a letter from him to Inker's lawyer proposing a repurchase agreement under which appellant would pay $75 a month toward the repurchase of her home. Appellant testified that she had told Smulker that she could not afford to pay more than $50 a month. Smulker told her that any attempt to open the judgment would cost a great deal of money, and that if she did not have the money, there was nothing he could do for her. Although he knew that appellant was of limited means—indeed there is a reference to her lack of means in the letter he wrote Inker's lawyer—he did not suggest that she might be able to receive assistance from Community Legal Services in trying to get the judgment opened.

When it appeared that Smulker would be unable to help her further, appellant asked the Federal Housing Adminis-

2. Appellant's late husband was a veteran of World War II and the Korean War.

tration whether it could help her. It was a representative of the F.H.A. who finally advised appellant to seek help from Community Legal Services. C.L.S. began work on appellant's case early in 1975, but before it got very far, appellant became marginally ineligible for its services because of an increase in her Social Security and Veterans Administration benefits. Her case was then referred to the Lawyers Reference Service, which tried unsuccessfully to refer the case to several lawyers in private practice. In August 1975 C.L.S. was specially reauthorized to represent appellant, and on September 8, 1975, the petition to open or strike the judgment was filed.

██ On October 15, 1975, appellant, in support of the petition, filed interrogatories directed to appellee. On February 26, 1976, appellee's motion for a protective order was granted. On July 5, 1977, appellant filed a second set of interrogatories, and on September 16, her deposition was taken.[3] On November 16, appellee's motion for a protective order with respect to appellant's second set of interrogatories was granted. On May 16, 1978, the lower court, without a hearing and with only appellant's deposition in the record, denied appellant's petition.

–2–

██ A petition to open a judgment by default is addressed to the equity side of the court:

In determining whether a judgment by default should be opened, we must ascertain whether there are present any

---

**3.** Meanwhile, on December 5, 1975, appellant had filed a petition to set aside the sheriff's sale of her home. Five days later, without a hearing, the petition was denied. As appellant explained in her deposition, she was so disgusted by this that she took the papers relating to her case and decided that she would go to church and pray about it. It was only after being encouraged to do so by a representative of the F.H.A. that she went back to C.L.S., approximately a year later. We will not hold this delay against appellant, however, because the delay that is important in considering a petition to open judgment is the delay before the petition is filed. Once the petition is filed, the respondent has the power to require the petitioner to proceed expeditiously. Pa.R.C.P. 209. Appellee here took no action under Rule 209.

equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his "day in court" and to have the cause decided upon the merits. In so doing, we act as a court of conscience. *Raymond J. Brusco Funeral Home v. Sicilia*, 277 Pa. Superior Ct. 115, 123, 419 A.2d 688, 692 (1980), *quoting Kraynick v. Hertz*, 443 Pa. 105, 111, 277 A.2d 144, 147 (1971).

In an assumpsit case, in exercising its equitable powers the court must look to the promptness with which the petition to open was filed, the reason given for the default, and the merits of the defense asserted. *Balk v. Ford Motor Company*, 446 Pa. 137, 285 A.2d 128 (1971). Because the decision whether to open a judgment is an equitable one, it depends on the particular facts of each case; there are no bright line tests, *Quatrochi v. Gaiters*, 251 Pa. Superior Ct. 115, 380 A.2d 404 (1977), and the cases are not easy to reconcile. *Duffy v. Gerst*, 286 Pa. Superior Ct. 523, 429 A.2d 645 (1981). Although the lower court's decision will be upheld absent an abuse of discretion, both the Supreme Court and this court have not hesitated to find an abuse of discretion in a lower court's refusal to grant a petition to open a judgment when we have found that the equities clearly favored opening the judgment. *E.g., Queen City Electrical Supply Company, Inc. v. Soltis Electric Company*, 491 Pa. 354, 421 A.2d 174 (1980); *Raymond J. Brusco Funeral Home v. Sicilia, supra; Brooks v. Surman Dental Labs, Inc.*, 262 Pa. Superior Ct. 369, 396 A.2d 799 (1979); *Toplovich v. Spitman*, 239 Pa. Superior Ct. 327, 361 A.2d 425 (1976).

 In the opinion filed in response to appellant's appeal, the lower court found that appellant had not satisfactorily explained either the default or the delay in filing her petition to open. The court did not consider the merits of her defense to the action. We have concluded that the court's findings are inconsistent with the clear equities of the case, and that in refusing to grant appellant's petition to open, the court abused its discretion.

—a—

As we have noted, the judgment against appellant was entered only 26 days after service of the complaint. This court has repeatedly condemned snap judgments. *E.g., Brooks v. Surman Dental Labs, Inc., supra; Silverman v. Polis*, 230 Pa. Superior Ct. 366, 326 A.2d 452 (1974). The lower court, however, did not acknowledge that the judgment here was a snap judgment. Since this case arose, the rules of civil procedure have been amended to require that notice be given of the intent to take a judgment by default. Pa.R.C.P. 237.1. *See* Explanatory Note—1979 to the Rule. While the amended rules did not apply to this case, they reflect our hostility to snap judgments.

The lower court said in its opinion that it had rejected appellant's explanation of her default for "two reasons. . . . There is a valid return of service . . . and [appellant's] own statement of facts indicates that she consulted a lawyer and instituted an action on the note in the fall of 1972." Slip op. at 1–2. But a valid return of service does not always show actual knowledge of the suit. *Maurice Goldstein Co., Inc. v. Margolin*, 248 Pa. Superior Ct. 162, 374 A.2d 1369 (1977). The lower court appears to have ignored both the fact that the sheriff's return did not indicate that the complaint was left with appellant personally and appellant's testimony that service was made on a baby-sitter and that the first notice she had that anything was happening was a card received from appellee shortly *after* the judgment was entered. It was only then that appellant consulted—and had any reason to consult—a lawyer.[4]

4. We find no support in the record for the lower court's statement that appellant "instituted an action on the note." Appellant did believe that payments credited to the judgment resulted from action taken by her first lawyer, and the petition to open reflected her belief by averring in paragraph 30 that "Mrs. Birnie filed an attachment against the brother's proceeds from the personal injury suit." However, as already mentioned, appellant's belief was mistaken, and the averment about the attachment was denied, correctly, in paragraph 30 of appellee's answer to the petition. *See* Brief for Appellant at 26–27.

–b–

In support of its finding that appellant had not explained the delay in filing her petition to open, the lower court recited in its opinion that the petition had been filed on November 22, 1977. Slip op. at 1. In fact the petition was filed on September 8, 1975.

To be sure, even so the delay was considerable, specifically, two years and eleven months after the default judgment was entered. But there is no "magic formula" by which we can determine whether a given delay was so long as to preclude granting a petition to open. The determination will depend on the particular facts. *Government Employees Financial Corp. v. Walker*, 259 Pa. Superior Ct. 371, 393 A.2d 873 (1978). "[W]here equitable circumstances exist, a default judgment may be opened regardless of the time that may have elapsed between entry of the judgment and filing of the petition to open." *Queen City Electric Supply Co., Inc. v. Soltis Electric Co., Inc., supra*, 491 Pa. at 361, 421 A.2d at 177. In some cases a period of less than two months has been found to be too long. *E.g., Schutte v. Valley Bargain City, Inc.*, 248 Pa. Superior Ct. 532, 375 A.2d 368 (1977) (forty-seven days); *Carducci v. Albright Galleries, Inc.*, 244 Pa. Superior Ct. 48, 366 A.2d 577 (1976) (fifty-four days). In other cases a very much longer period has been found not to be too long. *E.g., Queen City Electric Supply Co., Inc. v. Soltis Electric Co., Inc., supra* (twenty months); *Joseph Melnick Building and Loan Ass'n v. Melnick*, 361 Pa. 328, 64 A.2d 773 (1949) (seventeen years); *Bianco v. Pullo*, 195 Pa. Superior Ct. 623, 171 A.2d 620 (1961) (four years).

We have required the promptest action when the responsible party is knowledgeable and the delay is unexplained. For example, in *Schutte v. Valley Bargain City, Inc., supra*, the responsible party was an insurance company that waited 19 days after learning of the judgment before retaining counsel, who then for some unexplained reason delayed another 28 days before filing the petition to open. Some of the longer delays have been permitted when it was shown that the judgment was void, *Joseph Melnick Building Loan*

*Ass'n, supra* ; had been obtained by fraud, *Bianco v. Pullo, supra* ; or where the petitioner had taken all of the steps—including seeking legal counsel—that he reasonably believed were necessary to protect his interest, *Raymond J. Brusco Funeral Home v. Sicilia, supra; Sprouse v. Kline-Styer-McCann, Post No. 7155 Veterans of Foreign Wars*, 237 Pa. Superior Ct. 419, 352 A.2d 134 (1975).

Appellant argues that because of violations of the Motor Vehicle Sales Finance Act, Act of June 28, 1947, as amended, 69 P.S. § 601 *et seq.*, the finance agreement for her brother's automobile was illegal as to her, and the judgment against her was therefore void and subject to being opened at any time. We say more about this aspect of her defense later in this opinion. Although some authority supports appellant's claim that a void judgment is subject to being opened without regard to the passage of time, *Joseph Melnick Building and Loan Ass'n v. Melnick, supra, but see, Tice v. Nationwide Life Ins. Co.*, 284 Pa. Superior Ct. 220, 228–38, 425 A.2d 782, 787–92 (1981) (concurring opinion by SPAETH, J.), we do not need to decide whether the judgment against appellant is void in order to find that considering all of the circumstances, her petition to open was filed promptly enough.

The first notice appellant had of the judgment was the card she received in the mail from appellee. She did not ignore the card but rather called appellee as requested. On being told that her house was in danger she immediately consulted a lawyer. On being told that the lawyer could not represent her, she immediately consulted, and retained, another lawyer. Although appellant had the right to believe that her interests were being protected by this lawyer, *Charles J. Webb, Co., Inc. v. Webber*, 194 Pa. Superior Ct. 614, 169 A.2d 604 (1961), it appears that the lawyer measured her efforts on appellant's behalf by her estimate of what appellant could afford to pay. When appellant was served with the complaint in ejectment she again immediately sought legal help, only to end up with yet another lawyer who measured his services by his estimate of what

she could afford to pay. When, during the period that she was temporarily ineligible for Community Legal Services representation, her case was referred to the Lawyer Reference Service, no other lawyer stepped forward with any offer of assistance.

Even when the party seeking to open a judgment has been a bank, which we may presume to be knowledgeable and unconstrained in its ability to retain the assistance of counsel, we have found that the equities were such that a delay of nearly two years was excusable, and that it was an abuse of discretion for the lower court to find otherwise. *Queen City Electrical Supply Co., Inc. v. Soltis Electric Co., Inc.,* 258 Pa. Superior Ct. 305, 392 A.2d 806 (1978), *aff'd,* 491 Pa. 354, 421 A.2d 174 (1980). Here we find the equities in appellant's favor compelling.

-c-

It remains to consider whether appellant pleaded a meritorious defense to the action. Because of its view of the case the lower court did not consider this issue. The record, however, is sufficient for us to decide it ourselves. *Raymond J. Brusco Funeral Home v. Sicilia, supra.*

The requirement of a meritorious defense is only that a defense must be pleaded that if proved at trial would justify relief. *Alexander v. Jesray Construction Company,* 237 Pa. Superior Ct. 99, 346 A.2d 566 (1975). Appellant's petition to open alleges six defenses, under various provisions of the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. § 601 *et seq.,* the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.,* and the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.* These defenses include not only her having been induced to sign the papers in blank and never being given copies of them, but also failure to receive the notice of the right of rescission required by 15 U.S.C. § 1635 and failure to have disclosed to her all of the information required by 15 U.S.C. § 1638. Under both the Truth-in-Lending Act, 15 U.S.C. § 1614, and the Motor Vehicle Sales Finance Act, 69 P.S. § 615(F), appellee as assignee is equally liable with the automobile agency for

violations of the Acts. This is no less true because of appellee's having sued only on the judgment note and not on the sales finance agreement itself. 69 P.S. § 615(G).

We have no difficulty deciding that appellant has pleaded defenses that if proved at trial would justify relief. Both the Truth-in-Lending Act and the Motor Vehicle Sales Finance Act are remedial Acts designed to protect persons in appellant's position. We have previously held that a contract that violates the Motor Vehicle Sales Finance Act is illegal, and that if the illegality is apparent on the face of the contract, a judgment based on the contract is void and subject to being stricken. *Roxy Auto Company v. Moore*, 180 Pa. Superior Ct. 603, 122 A.2d 87 (1965).

-3-

Up to this point we have considered the case in terms of the tripartite test set forth in cases such as *Balk v. Ford Motor Co., supra.* Having decided that appellant has met that test, we could stop. Appellant has argued, however, that the tripartite test was intended only as an analytical framework to guide a court in the exercise of its equitable powers as a "court of conscience," and that it should not be applied as literally as its formulation suggests. It was to consider this argument that we granted appellant's application for reargument before the court *en banc.*

Without question, in many cases where we have found that one of the three requirements for opening a judgment was not met we have stopped without considering the arguments made with regard to the other two. *E.g., Reyer v. Guinta*, 292 Pa. Superior Ct. 182, 436 A.2d 1212 (1981). It is difficult, however, to reconcile this approach with the many other cases that emphasize the equitable nature of the decision whether to grant a petition to open, and the importance of balancing the prejudice to the two sides. *E.g., Kraynick v. Hertz, supra; Raymond J. Brusco Funeral Home v. Sicilia, supra; Toplovich v. Spitman, supra.*

In a recent case, which we have cited several times in this opinion, the Supreme Court said:

The sole remaining issue, then, is whether the petition to open was promptly filed. This is always an equitable determination which must be made in light of what is reasonable under the circumstances. Indeed, it is well established that where equitable circumstances exist, a default judgment may be opened regardless of the time that may have elapsed between entry of the judgment and filing of the petition to open.

*Queen City Electrical Supply Co., Inc. v. Soltis Electric Co., Inc., supra*, 491 Pa. at 361, 421 A.2d at 174 (citation omitted).

The question is, Can a court make an "equitable determination" of what is "reasonable under the circumstances" without considering *all* of the circumstances of the particular case? We think not.

Consider the present case, for example. Appellant argued vigorously to the lower court that violations of the Motor Vehicle Sales Finance Act made the contract on which the judgment was entered against her illegal. The lower court never considered this argument, for it applied the tripartite test in a rigid step-by-step way: having decided that default and delay were not excused, it never went on to consider the merits of appellant's defense. If, however, *all* of the circumstances are to be considered, the court should not have ignored appellant's defense. The merits of a defense may have some bearing on the question of whether a petition to open was promptly enough filed. The more plainly meritorious the defense, the more heavily the equities will incline in the petitioner's favor, which is to say, the more appropriate it may be to excuse some delay. Here, as we have discussed, appellant's defense appears compelling; she may, indeed, be able to show that the judgment against her was void.

We are not suggesting that the tripartite test is not important. The test will often provide a ready determination—a navigator's "quick fix"—of where the equities lie. For example, in a case where no attempt has been made to explain the default or delay, or where, in an assumpsit case, no defense has been pleaded, or only one clearly without

merit, it is difficult to imagine that the equities would favor opening the judgment. But where some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a water-tight compartment, to be evaluated in isolation from other aspects of the case. Instead the court should consider each part in the light of all of the circumstances and equities of the case. Only in that way can a chancellor act as a court of conscience.

■ The correctness of this conclusion is confirmed, not only by general considerations of how a court of equity should proceed, but by settled practice when the default judgment has been entered in an action in trespass. In such a case it is only necessary that the petition to open be promptly filed and the default reasonably explained; it is not necessary to plead a meritorious defense. *Balk v. Ford Motor Co., supra.* However, "while a good defense would normally not be required in a trespass action, where present it can at least qualify as an equitable consideration favoring the opening of judgment." *Id.* 446 Pa. at 140 n. 3, 285 A.2d at 131 n. 3. This rule is repeated in many of our cases. *E.g., Reyer v. Guinta, supra; Forest Hills Transfer & Storage Company, Inc. v. Beaver Valley Builders Supply, Inc.,* 271 Pa. Superior Ct. 566, 414 A.2d 628 (1979); *Sprouse v. Kline-Styer-McCann, Post No. 7155 Veterans of Foreign Wars, supra.* Thus, in a trespass case the court may properly consider how meritorious is the defense in deciding whether the petition to open was filed promptly enough, or the default reasonably explained. We see no basis for saying that in an assumpsit case the court may not do the same.

REVERSED.

CAVANAUGH, J., files a dissenting opinion in which PRICE and HESTER, JJ., join.

CAVANAUGH, Judge, dissenting:

I dissent because, in my view, the majority has ignored the applicable law. The only issue before this court is

whether the court below abused its discretion in refusing to open a judgment entered by default. The grant of a petition to open judgment is a matter of judicial discretion and an appeal to the court's equitable powers. The discretion is to be exercised only when three factors coalesce: (1) The petition has been promptly filed; (2) a meritious defense can be shown and (3) the failure to appear can be excused. *Balk v. Ford Motor Company*, 446 Pa. 137, 258 A.2d 128 (1971). Further, a lower court's refusal to open a judgment will not be reversed unless there has been an abuse of discretion. *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971). What constitutes an abuse of discretion was clearly stated in *Mielcuszny v. Rosol*, 317 Pa. 91, 93, 94, 176 A. 236 (1934):

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

It is not sufficient to persuade an appellate court that it might have reached a different conclusion if it, in the first place, had been charged with the duty imposed on the court below. *Garrett's Estate*, 335 Pa. 287, 6 A.2d 858 (1939).

In *Day v. Wilkie Buick Company*, 239 Pa.Super. 71, 361 A.2d 823 (1976) this court reversed the order of the lower court refusing to open a default judgment, as the petition to open was promptly filed (approximately sixteen days after the entry of default) and the petition presented a "sufficient case of excuse." Judge Hoffman filed a dissenting opinion in which Judge Spaeth joined, stating at 239 Pa.Super. 75, 76, 361 A.2d 825, 826:

*It is irrelevant that we would decide differently were we charged with the duty to decide the case in the first instance.* (Emphasis added).

In the instant case the majority has decided that the court below abused its discretion in determining that the petition to open had not been promptly filed. The majority has simply substituted its own judgment for that of the court below and the law does not permit this.

In order to fully understand this case we must briefly consider the factual and procedural background. The narrative in this case which had the unhappy result of the appellant losing her house, begins on or about December 20, 1971, when the appellant accompanied her brother and his wife to the Peter James Buick Agency in Ardmore, Pennsylvania. Mrs. Davis' brother, Charles Young, wanted to buy an automobile and asked her to go along to co-sign for the car. At the time Mrs. Davis was on her way to Washington D. C. to visit her sick brother and she did not have much time to remain at the automobile agency. She testified that an employee of the agency asked her to sign some papers in blank. Apparently, the agency considered Mrs. Davis to be a suitable co-signer as she was buying a house and an automobile herself. She testified that an employee of the automobile agency told her that they wanted a co-signer who did not move about the city and who had good credit references. She thought that by becoming a co-signer it meant that if her brother could not be located that she would be contacted and would in turn contact her brother and he would make payments on the car.

Mr. Young fell behind in his car payments and a complaint in assumpsit was served on Mr. and Mrs. Young on August 1, 1972, and a default judgment was taken as to them on August 25, 1972. A complaint against the appellant, Mrs. Davis, was served at her residence on September 9, 1972. Mrs. Davis was not home and the complaint was served on an adult at her house. The appellant does not challenge the validity of the service of the copy of the complaint. On October 3, 1972 a default judgment was taken against the appellant. Damages were assessed in the total amount of $4,838.90 representing the unpaid balance of $4,100.90 and collection charges of eighteen per cent or $738.00. On January 3, 1974 a writ of execution was filed for the purpose of selling Mrs. Davis' home at 6134 Lebanon Avenue, Philadelphia, Pennsylvania. The writ of execution claimed a balance due in the amount of $3,959.84. Appellant's home was sold on February 4, 1974, at the sheriff's sale to the

attorney for the plaintiff on the writ. In August, 1974, an action in ejectment was commenced against Mrs. Davis and in September, 1974, a sheriff's deed was given to Carl Inker for Mrs. Davis' home.

On September 8, 1975 Mrs. Davis filed a petition to open and/or strike the default judgment. On July 5, 1977, Mrs. Davis filed interrogatories to the Provident Credit Corporation, appellee. On September 16, 1977, Mrs. Davis' deposition was taken and this constitutes the only testimony before the court below. Appellee filed a motion for protective order with regard to the interrogatories filed on July 5, 1977, and the motion for protective order was granted without hearing by Judge Greenberg on November 16, 1977. On May 16, 1978 Judge Jenkins denied Mrs. Davis' petition to open and/or strike the default judgment and from these two orders the appellant has appealed to this court.

Judge Jenkins in his opinion in the court below denied the petition to open judgment on the grounds that it was not promptly filed and that the default was not reasonably explained. On appeal to this Court, a panel consisting of Wieand, Robinson and Louik, JJ. sustained the action of the lower court in an opinion by Robinson, J., concurring statement by Wieand, J. and dissenting opinion by Louik, J. Appellant's petition for reargument was granted and the case was argued before the court en banc.

The law attaches genuine significance to the requirement that a petition to open a default judgment must be filed promptly after the petitioner learns of the default. Nevertheless, "[t]he law does not establish a certain number of days which constitutes a cutoff point between a prompt filing of a petition to open and one which is not timely filed." *King v. Evans*, 281 Pa.Super. 219, 224, 421 A.2d 1228, 1230 (1980). In some cases it is evident that the petition to open has been promptly filed. In *DiNenno v. Great Atlantic and Pacific Tea Company*, 245 Pa.Super. 498, 369 A.2d 738 (1976) the petition to open was filed fifteen days after the entry of a default judgment, and this court held that "clearly the petition to open was promptly filed." 245 Pa.Super.

at 500, 369 A.2d at 739. *See* also *Quaker Transit Company, Inc. v. Jack W. Blumenfeld and Company*, 277 Pa.Super. 393, 419 A.2d 1202 (1980) in which this court held that a petition to open filed fourteen days after the default judgment had been entered was timely filed. Similarly, in *Cruse v. Woods*, 279 Pa.Super. 242, 420 A.2d 1123 (1980) a petition to open filed six days after the judgment was entered was promptly filed.

In the case of *Ruczynski v. Jesray Construction Corporation*, 457 Pa. 510, 326 A.2d 326 (1974) the Supreme Court held that the court below abused its discretion in opening a default judgment where the petitioner delayed less than five months after learning that a default judgment had been entered against him. During this time the attorneys for the parties were attempting to negotiate a settlement. The court also noted in *Ruczynski, supra* that timeliness is measured from the time one receives notice of the entry of the default judgment and not from the actual entry. *See* also *Hutchison v. Hutchison*, 492 Pa. 118, 422 A.2d 501 (1980). In order to determine what is a prompt filing of a petition to open the circumstances of each individual case must be considered. In *Jost v. Phoenixville Area School District*, 237 Pa.Super. 153, 346 A.2d 333 (1975) the court determined that a petition to open was not promptly filed where it was filed five months after the default judgment had been entered. The petition alleged a meritorious defense. In *Reliance Insurance Company v. Festa*, 233 Pa.Super. 61, 335 A.2d 400 (1975) the petition to open was filed some four months after the entry of the default judgment. The petitioner alleged that letters notifying the appellant that a default judgment was entered were apparently filed away and not seen by counsel for several weeks. The court stated at 233 Pa.Super. 64, 335 A.2d 401:

> We need not consider whether such inadvertence may be considered in a determination of whether the insurance company acted promptly, because we find that counsel's additional delay of 71 days from September 27, 1973, when it admits actual notice of the judgment, until December 7,

1973, when the petition was finally filed, is too excessive to meet the requirement of promptness.

In the *Reliance* case the court held that the lower court erred in opening the default judgment. A delay of eight weeks between the time of notice of the default judgment and the petition to open was found too long in *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973). As an illustration of how promptly a party must move to open a default judgment, the court held in *Texas and Block House Fish and Game Club v. Bonnell Run Hunting and Fishing Corporation*, 388 Pa. 198, 130 A.2d 508 (1957) that the court below was correct in finding that no satisfactory explanation had been given for delay of twenty-seven days from the time of notice of the entry of default judgment until the petition to open judgment was filed and the court held that the petition was not timely filed. In *Schutte v. Valley Bargain Center, Inc.*, 248 Pa.Super. 532, 375 A.2d 368 (1977) the lower court found that a petition to open was promptly filed notwithstanding a delay of forty-seven days between the time that confusion was resolved by the defendant as to an action against it, and the filing of the petition to open the default judgment. This Court found that the court below abused its discretion in finding that the petition to open was promptly filed. Similarly, in *Quatrochi v. Gaiters*, 251 Pa.Super. 115, 380 A.2d 404 (1977), this Court found that the lower court abused its discretion in granting a petition to open a default judgment filed sixty-three days after the defendant received notice of the entry of the default judgment. That our courts are very sensitive to a prompt filing of a petition to open is illustrated by *Smith v. Tonon*, 231 Pa.Super. 539, 331 A.2d 662 (1974) in which this Court held that the court below abused its discretion in opening a default judgment where counsel for the defaulting party had three weeks in which to file a petition to open before he left for a three months tour of duty in the army reserve.

In the recent case of *Duffy v. Gerst*, 286 Pa.Super. 523, 429 A.2d 645 (1981) this court again recognized the importance of a prompt filing of a petition to open a default

judgment. Default judgment was entered on October 19, 1978 and the petition to open was filed on March 22, 1979. The petition to open was denied by the court below which did not discuss the requirement of promptness. This court remanded for further proceedings. It stated at 286 Pa.Super. 537, 429 A.2d 653:

> Assuming, therefore, that appellants should be regarded as having filed their petition three months after the final decree instead of four months, *the question becomes whether this delay was so long as to require that the petition be denied as not timely, even though, if its allegations are true, it shows a reasonable explanation for appellants' failure to answer the complaint, and a meritorious defense to the complaint.* (Emphasis added)

The circumstances of each case determine the question of promptness. For example, in *Raymond J. Brusco Funeral Home v. Sicilia*, 277 Pa.Super. 115, 419 A.2d 688 (1980) a default judgment was filed on September 8, 1976 and the defendant first learned of it on December 7, 1976. The petition to open judgment was filed on July 6, 1977, and this Court, reversing the court below, found it to be timely filed. An arrangement had been worked out between the plaintiff's attorney and the defendant's attorney concerning the payment of a funeral bill whereby the plaintiff agreed to waive the prompt filing requirement if monthly payments were made on the judgment. On April 30, 1977, the defendant was told that as the payments were not being made that he should proceed to open the judgment. The court held that in the circumstances the petition to open was promptly filed. It noted that "it is undoubtedly true that in numerous cases we have found petitions that were filed in less than the time elapsed in the instant case to be not timely filed... In short, there is simply no 'magic' number which will determine whether a petition is timely or not." 277 Pa.Super. at 119, 120, 419 A.2d at 690. In some circumstances, what might appear at first glance to be an obvious untimely filing of a petition to open, the court has found the petition to be timely filed. In the recent case of *Queen City Electri-*

*cal Supply Company, Inc. v. Soltis Electric Company*, 491 Pa. 354, 421 A.2d 174 (1980) (Roberts J. filed a dissenting opinion in which Larsen, J. joined) the Supreme Court found that the trial court had abused its discretion in denying a petition to open. The court stated at 491 Pa. 356, 421 A.2d 175:

> The issue here presented is whether a court should open a snap default judgment entered without notice against a garnishee one day after the time allowed for filing answers to interrogatories had expired where (1) the garnishee is a stranger to the underlying transaction, (2) the default was excusable, (3) the answers to interrogatories were filed one day after the default judgment was taken, (4) the garnishor would reap a windfall in excess of $20,000.00, and (5) although the petition to open was not filed for twenty months, the garnishor sustained no prejudice from the delay.

Despite the fact that the garnishee waited twenty months to petition to open, the Supreme Court, affirming the Superior Court, found the petition to be timely filed. It was pointed out that the courts have expressed a greater willingness to relieve a defaulting garnishee than a defaulting defendant. The court also noted that the delay in filing the petition to open resulted substantially from the legal confusion produced by the conflicting demands made upon the bank (garnishee) by the garnishor and the trustee in bankruptcy. The court also found that the garnishor suffered no prejudice by the delay. The court stated at 491 Pa. 361, 421 A.2d 177:

> The sole remaining issue, then, is whether the petition to open was promptly filed. This is always an equitable determination which must be made in light of what is reasonable under the circumstances. Indeed, it is well established that where equitable circumstances exist, a default judgment may be opened regardless of the time that may have elapsed between entry of the judgment and filing of the petition to open. *See Baranofski v. Malone*, 371 Pa. 479, 482, 91 A.2d 908, 909 (1952).

It should be noted that *Baranofski v. Malone*, 371 Pa. 479, 91 A.2d 908 (1952) involved a petition to open judgment that was filed almost ten months after its entry and less than seven months after the petitioner received notice of the entry by registered mail. The court found the petition to be untimely filed, and stated at 371 Pa. 482, 91 A.2d 909:

> Moreover, and apart from all other considerations, defendant lost any possible right to equitable relief because of his delay in seeking it. It is true that a court has the *power* to open a judgment by default (as distinguished from a judgment adversely rendered) even after the expiration of the term in which it was entered; *Breden v. Gilliland*, Executor, 67 Pa. 34; *King v. Brooks*, 72 Pa. 363; *Roth v. Pechin*, 260 Pa. 450, 454, 103 A. 894, 896; *Richey v. Gibboney*, 154 Pa.Super. 1, 7, 34 A.2d 913, 915. But the application for that purpose must be made without unreasonable delay or else the relief sought is barred by laches.

The question is immediately raised whether the language of the Supreme Court in *Queen City Electrical Company Inc. v. Soltis Electric Company, supra*, that "where equitable circumstances exist, a default judgment may be opened *regardless of the time that may have lapsed between entry of the judgment and filing the petition to open*" means that the Supreme Court has suddenly abandoned the requirement that the petition to open must be promptly filed. We think not. We believe that the Court is merely stating the requirement that the determination of what is prompt depends on the circumstances of the case. In fact, the Superior Court in *Queen City Electrical Supply Company v. Soltis Electric Company*, 258 Pa.Super. 305, 309, 392 A.2d 806, 807 (1978) succinctly stated the problem as follows: "Instantly, there is no serious dispute that the default was excusable and that a meritorious defense has been shown. The issue is whether the twenty-month delay in filing the petition to open can be considered 'prompt' under the circumstances of this case."

In *Maurice Goldstein Co., Inc. v. Margolin, Inc.*, 285 Pa.Super. 161, 427 A.2d 162 (1980) this Court stated that the

Pennsylvania Supreme Court set forth the test for determining whether a petition to open judgment has been promptly filed in the *Queen City Electrical Supply Company case, supra,* and concluded that "no equitable circumstances exist here to justify opening the judgment against appellee at that late date." 285 Pa.Super. 166, 427 A.2d 164 (1980). While this language might indicate that the promptness requirement has been superseded by "equitable circumstances" this doubt is put aside as the court stated at 285 Pa.Super. 164, 427 A.2d 163 *"[w]e find that Mr. Margolin [who filed the petition to open the default judgment] failed to satisfy the requirement of a prompt filing of the petition."* (Emphasis added). In the *Goldstein Co. Inc.* case default judgment was filed on February 23, 1973 and the petition to open was filed on May 30, 1975, two years and three months later. This Court held that the court below had abused its discretion in opening the judgment. Apparently several attempts had been made to notify the petitioner of the suit and the default judgment against him although he claimed that he first learned of the default judgment in April, 1975, which was only about a month before he filed his petition to open.

We must review the circumstances of this case to determine if the appellant acted promptly having once learned that a default judgment was entered against her. A default judgment in a sense is a red flag that signals danger. "The concept of a default judgment is based on a litigant's failure to do something that he should have done to protect his interests. Once a party learns that a default judgment has been entered against him, indifferent conduct must be replaced with that consistent with the exigency of the situation." *King v. Evans,* 281 Pa.Super. 219, 421 A.2d 1228, 1230 (1980). In this case there was a period of almost three years between the filing of the default judgment and the filing of the petition to open and such a delay appears to be inordinate unless in the circumstances we find that the appellant acted promptly. The appellant does not question the validity of the service of the complaint on her. The

default judgment was taken on October 3, 1972. Appellant learned of the entry of the judgment shortly thereafter when she spoke to a representative of the Provident Credit Corporation on the telephone and was told the judgment had been entered against her and that she ran the risk of losing her house since her brother had not made payments on his car. In November, 1972, about a month after judgment was entered the appellant was very concerned about the fact that she might lose her home. She contacted an attorney, Allan Getson, who said he could not represent her as he represented her brother, Charles Young, in another matter. Mrs. Davis then contacted another attorney, Cassandra Birnie, with respect to the default judgment and the possible loss of her house. Mrs. Birnie apparently advised appellant to seek to have the judgment removed but told her that it would be expensive to do this. Mrs. Davis chose not to pay the cost of legal proceedings. It is not clear from the record what Mrs. Davis or her attorney did concerning the matter from the fall of 1972 until November, 1973. In November, 1973, Mrs. Davis received a copy of a letter dated November 6, 1973 from the Provident Credit Corporation to Mr. Young stating that in the "event that you have not been out of work you are responsible for all delinquent installments which total $1,528.92. In August, 1974, Mrs. Davis received a complaint in ejectment as her house had been sold at sheriff's sale on February 4, 1974. She contacted an attorney, Mr. Smukler, who advised her of the necessity of proceedings to have the default judgment against her removed. He also told her the proceedings would be costly. Mrs. Davis then left Mr. Smukler and in early 1975 contacted the Community Legal Services, her present counsel. Counsel for Community Legal Services contends on appeal that her new counsel began the detailed process of mustering the facts and researching the issues when Mrs. Davis became marginally ineligible for Community Legal Service aid because of an increase in her Veterans Administration and Social Security benefits. The case then apparently was referred to Lawyers Reference Service which attempted unsuccessfully to refer the case to several private attorneys.

142

Counsel for appellant further alleges in his brief that because of special circumstances the Community Legal Services was reauthorized in August, 1975, to again represent appellant and the petition to reopen was filed in September, 1975.

The dominant fact in this case is that as early as November, 1972, the appellant was aware that a default judgment was entered against her. She further understood that she ran the risk of losing her house, which she ultimately did, because of the default judgment. She was advised by at least two attorneys that proceedings could be taken to petition to open the judgment but she did not want to proceed because of the cost involved. Finally, in the early part of 1975 the appellant sought help at Community Legal Services where free services were available for those eligible to receive them. It is alleged that after she was first represented by Community Legal Services she lost her eligibility for free services because of increased income. Even though the appellant was again entitled to free legal services in September of 1975 she made no use of the services during the period January, 1976, until the spring of 1977.

Although appellant argues that she did the best she could to obtain proper legal representation, it appears that she was unwilling to pay counsel to proceed to petition to have the judgment against her opened, although it was the default judgment that ultimately resulted in the loss of her house. It is one of the first maxims of equity jurisprudence that equity aids the vigilant and not those who slumber on their rights. *Witmer v. Exxon Corporation*, 260 Pa.Super. 537, 394 A.2d 1276 (1978).

Certainly, we sympathize with the appellant who is a widow with limited means and who has lost her house because of the fact that she co-signed on an obligation so that her brother could purchase an automobile. While the circumstances dictate what constitutes prompt action in every case dealing with a petition to open a default judgment, we believe that this court has misapplied the law in determining that the court below abused its discretion.

Accordingly I dissent.